PACIFIC EMPLOYERS INSURANCE COMPANY v
MICHIGAN MUTUAL INSURANCE COMPANY

Docket No. 99285. Argued January 9, 1996 (Calendar No. 1). Decided
    July 9, 1996.

    Pacific Employers Insurance Company, the umbrella carrier for West
        Ottawa Public Schools, brought an action in the Ottawa Circuit
        Court against Michigan Mutual Insurance, the district's general lia-
        bility carrier, and State Farm Insurance Company, its automobile
        liability carrier, seeking a declaration of respective liability in an
        underlying action brought against the district and its bus driver for
        injuries suffered by a child returning from her first day of kinder-
        garten on a district school bus. The child was disembarked by the
        bus driver at the wrong stop, and, while trying to find her way
        home, was hit by a car while attempting to cross a street at an
        unfamiliar location. The court, James Townsend, J., found that
        Michigan Mutual was primarily liable. The Court of Appeals,
        MICHAEL J. KELLY, P.J., and CONNOR and A. A. MONTON, JJ., affirmed,
        concluding that "use" should be defined narrowly to encompass
        only those injuries arising from the carrying of persons aboard a
        school bus, and, because the child's injuries occurred five to ten
        minutes after and about half a mile away from where she alighted
        from the bus, the injuries and damages were not covered by the
        State Farm policy (Docket No. 146859). Michigan Mutual appeals.

        In a unanimous opinion by Justice LEVIN, the Supreme Court held:

        Use of a school bus as stated in the policies at issue includes dis-
    embarkation of a kindergartner at a place other than a predeter-
    mined bus stop. An injury that is foreseeably identifiable with the
    disembarkation at a place other than the predetermined location
    arises out of the use of the school bus.

        1. The question in this case is whether the accident that injured
    the child arose, as stated in the State Farm policy, out of the own-
    ership, maintenance, or use of the school bus or whether, as stated
    in the Michigan Mutual policy, coverage is excluded because the
    accident arose out of the ownership, maintenance, operation, use,
    or loading or unloading of the school bus. The Court of Appeals
    failed to recognize the scope of the term "use" when it held that
    school bus use under the State Farm policy was limited to the car-

rying of persons in connection with school attendance. "Use" is defined more broadly than the mere carrying of persons; while it encompasses the "operation" of a bus, it may also include a range of activity unrelated to actual driving. The bus driver's charge included disembarking the children at predetermined bus stops, not merely transporting them to and from school. The driver "used" the bus in doing so, even if her conduct is characterized as a separate and personal act. A foreseeably identifiable injury resulting from the failure to disembark a child from a school bus at a predetermined destination is no more beyond the scope of "use" under the State Farm policy because the separate and personal negligence of the driver was involved than a foreseeably identifiable injury caused by the school bus crossing a double yellow line would be excluded from "use" under the policy because the separate and personal negligence of the driver was involved.

2. Upon analysis, State Farm, as the automobile liability insurer, rather than Michigan Mutual, the general liability insurer, is responsible for providing coverage in the circumstances. Michigan Mutual's policy states that its insurance does not apply to bodily injury or property damage arising out of use of any automobile. Although this exclusion is written in the negative, the language is otherwise virtually identical to that found in the State Farm policy. Also telling is that the language of the Michigan Mutual exclusion is set forth under the heading, "Transportation of Pupils," clearly communicating Michigan Mutual's intention not to provide coverage for the transportation of pupils in particular.

3. Ordinarily an automobile liability insurer would not be responsible for injuries suffered ten minutes after disembarkation and a quarter of a mile from the place of disembarkation. However, the term "use" in the phrase "arising out of the ownership, maintenance, or use" of a school bus includes disembarking school children, especially a child at the conclusion of the first day of kindergarten, at the predetermined location. The purpose of transporting a child by a school bus is to assure that the child reaches the predetermined bus stop under the supervision of the school bus driver. In this case, the driver used the bus to take the child to the wrong place, and a foreseeably identifiable injury resulted.

Reversed.

204 Mich App 265; 514 NW2d 239 (1994) reversed.

*Cholette, Perkins & Buchanan* (by *Robert E. Attmore*) for the plaintiff.

*Allaben, Massie, Vander Weyden & Timmer* (by *Sam F. Massie, Jr.*) for Michigan Mutual Insurance Company.

*Linsey, Strain & Worsfold, P.C.* (by *Joseph P. VanderVeen*), for State Farm Mutual Automobile Insurance Company.

LEVIN, J. The question presented is whether a school district's general liability insurer or its automobile liability insurer is subject to liability for injuries suffered by a child returning from her first day of kindergarten, who was disembarked by a school bus driver at the wrong stop, and who, trying to find her way to her destination, was injured crossing a street at an unfamiliar location.

The general liability insurer asserts that the injury arose out of the "use" of the school bus, while the automobile insurer asserts that the injury did not arise out of the "use" of the school bus, but rather was the result of the separate and personal negligent act of the school bus driver.

We hold that "use" of a school bus, as stated in these policies of insurance, includes disembarkation of a kindergartner at a place other than the predetermined bus stop, and that an injury that is foreseeably identifiable with the disembarkation at a place other than the predetermined location, arises out of the "use" of the school bus.

I

Five and one-half-year-old Amy Doolaard was returning on September 8, 1982, from her first day of kindergarten in the West Ottawa Public Schools on a school bus driven by school system employee Ger-

trude Witteveen. Amy was wearing a tag on her clothes supplied by the school indicating that she was to be let off the bus at the corner of 156th and Lakewood. Witteveen had been furnished with a list of the students and the locations where they were to be dropped off. She was to check by radio with the school if a tag did not correspond with the list. She did not do so, and mistakenly dropped Amy off at 160th and Perry.

Amy, in an effort to reach her babysitter's house on her own, walked about half a mile along 160th Street to Lakewood Boulevard. When Amy reached Lakewood, she attempted to cross the street, but was struck by an oncoming car. Amy sustained serious and permanent disabling injuries.

A

West Ottawa had insurance coverage through three carriers. Appellant Michigan Mutual Insurance Company was the general liability carrier providing primary coverage up to one million dollars. The policy was subject to the following exclusions:

> Transportation of Pupils: With respect to the transportation of students or pupils, exclusions (b) and (e) of the policy are replaced by the following:
>
> The insurance does not apply to bodily injury or property damage *arising out of the ownership, maintenance, operation, use, loading or unloading* of any . . . automobile . . . owned, operated or hired by or for the insured. . . . [Emphasis added.]

The automobile liability carrier was appellee State Farm Mutual Insurance Company, which provided primary coverage up to $500,000. The policy provided that the insurer agrees:

> To pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of
>
> (A) bodily injury sustained by other persons, and
>
> (B) property damage,
>
> caused by accident *arising out of the ownership, maintenance or use, including loading or unloading,* of the owned motor vehicle . . . .
>
> School Bus, Church and Other Approved Bus Use
>
> The coverage applies only while the motor vehicle is used for a "use" shown in the exceptions space on the declarations page and during maintenance, inspection, testing or renovation, subject to:
>
> Use
>
> Bus uses are:
>
> A. School Bus Use.
>
> School Bus Use—means the carrying of persons in connection with school attendance or any school activity of your school or school district. [Emphasis added.]

Appellee Pacific Employers Insurance Company was the umbrella carrier, providing coverage up to five million dollars applicable when the primary coverage provided by State Farm or Michigan Mutual is exhausted.

B

Johannes Doolaard, Amy's father and conservator of her estate, brought suit in May 1985 against West Ottawa Public Schools and school bus driver Witteveen for damages resulting from Amy's injuries.

The excess carrier, Pacific, filed this action seeking a declaratory judgment concerning the liabilities of the insurers. Pacific contended that the general liability insurer, Michigan Mutual, rather than the automobile insurer, State Farm, was the primary insurer.

While this action was pending, the underlying law suit was settled.

The circuit judge ruled, in the present action, that Michigan Mutual was primarily liable for costs incurred in the settlement of the underlying suit. The Court of Appeals affirmed.[1] The Court concluded that "use" should be defined narrowly "to encompass only those injuries arising from the carrying of persons aboard the bus."[2] Because Amy's injuries occurred five to ten minutes after and about half a mile away from where she alighted from the bus, the Court reasoned that the injuries and damages were not covered by the State Farm policy. The Court drew a distinction between Witteveen's driving of the school bus, which it said involved the "use" of the bus, and her "separate, personal act of discharging Amy Doolaard at the wrong stop."[3]

II

The parties agree that one or the other of the two primary insurers, Michigan Mutual or State Farm, is subject to liability. It is not claimed that neither primary insurer is subject to liability with the result that only the excess carrier provides coverage.

The question is whether the accident that injured Amy arose, as stated in the State Farm policy, "out of the ownership, maintenance or use" of the school bus or whether, as stated in the Michigan Mutual policy, coverage is excluded because the accident arose "out of the ownership, maintenance, operation, use, loading or unloading" of the school bus.

---

[1] 204 Mich App 265; 514 NW2d 239 (1994).

[2] *Id.* at 269.

[3] *Id.* at 270.

Because the language in the State Farm policy describing the coverage and the language in the Michigan Mutual policy describing the exclusion from coverage is essentially parallel, the general rules of construction are of little assistance in resolving this controversy between two (or three) insurers in which the insured has no direct interest. We, nevertheless, note that, in general, exclusionary clauses are construed against the insurer.[4] But, "[t]his Court cannot create ambiguity where none exists. . . . Clear and specific exclusions must be given effect."[5] We also review an exclusion from coverage, bearing in mind that an insurance contract should be read as a whole to effectuate the overall intent of the parties.[6]

III

We turn to a consideration of whether Amy's injury "arose from" the "use" of the school bus.

The school bus was "used" to transport Amy until shortly before the accident. She was injured after disembarking the bus.

The tort standard of causation is not determinative of causation in an insurance case.[7] The insured must show more than the minimal "but for" causation. See *Thornton v Allstate Ins Co*, 425 Mich 643, 650; 391 NW2d 320 (1986), in which this Court adopted a cau-

---

[4] *Bianchi v Automobile Club of Michigan*, 437 Mich 65, 70; 467 NW2d 17 (1991).

[5] *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992); *Allstate Ins Co v Freeman*, 432 Mich 656, 666; 443 NW2d 734 (1989).

[6] *Churchman*, n 5 *supra* at 566; *Fresard v Michigan Millers Mut Ins Co*, 414 Mich 686, 694; 327 NW2d 286 (1982).

[7] *Vanguard Ins Co v Clarke*, 438 Mich 463, 466, n 3; 475 NW2d 48 (1991); *Hernandez v Protective Casualty Ins*, 473 So 2d 1241 (Fla, 1985).

sation standard set forth in *Kangas v Aetna Casualty & Surety Co*, 64 Mich App 1, 17; 235 NW2d 42 (1975), that stated:

> [W]hile the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle.

Other states and commentators have stated essentially comparable standards.[8]

## IV

The Court of Appeals concluded that " '[u]se' is narrowly defined to encompass only those injuries arising from the carrying of persons aboard the bus."[9] While this definition may suffice for a public transit bus that transports passengers from embarkation to

---

[8] After surveying case law construing the phrase "arising out of the use of" from its own and other jurisdictions, the Supreme Court of Connecticut stated that for a homeowner's exclusion with that language to apply, "it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of the automobile . . . ." *Hogle v Hogle*, 167 Conn 572, 577; 356 A2d 172 (1975). See also *Classified Ins Co v Vodinelich*, 368 NW2d 921, 923 (Minn, 1985) (requiring the injury to be "a natural and reasonable incident or consequence of the use of the vehicle"); 6B Appleman, Insurance Law & Practice, § 4317, pp 360-363 (the phrase "ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle").

Compare *Michigan Mut Liability Co v Ohio Casualty Ins Co*, 123 Mich App 688, 695; 333 NW2d 327 (1983) (adopting the "flowing from," "growing out of standard") with *Century Mut Ins Co v League General Ins Co*, 213 Mich App 114, 119-120; 541 NW2d 272 (1995) (rejecting *Michigan Mutual* as too "liberal" and inconsistent with "the more restrictive causation requirements of *Thornton/Kangas*").

[9] 204 Mich App 269.

disembarkation, the Court of Appeals definition ignores a major aspect of the particular "use" to which a school bus is put. A school bus driver is charged both with physically carrying passengers on the bus *and* with assuring that each child is delivered to a predetermined bus stop. When this driver failed to disembark the child at the correct location, she "misused" the bus. The injuries that followed were foreseeably identifiable with the negligent decision to disembark the child at the wrong bus stop.

The Court of Appeals failed to recognize the scope of the term "use" when it held that school bus use under the State Farm policy was limited to the carrying of persons in connection with school attendance.[10] "Use" is defined more broadly than the mere carrying of persons and, while it encompasses the "operation" of the bus, it may also include a range of activity unrelated to actual driving.[11]

A

Although the State Farm policy does not include the term "operation," "use" as "the carrying of per-

---

[10] *Id.*

[11] See 1 Long, Liability Insurance, § 4.17, p 4-128 ("The word 'use' has a broader connotation than the words 'operate' or 'drive'"). See also *Vanguard*, n 7 *supra*.

In *Vanguard*, this Court held that the insureds' deaths "arose out of" the operation of a vehicle where one of the insureds drove his vehicle into the garage and accidentally asphyxiated himself and two members of his family by lowering the garage door while keeping the engine running. We so concluded although the vehicle was not being "operated" and was not "carrying" anyone anywhere at the time of the injury.

State Farm and Pacific contend that *Vanguard* is inapposite because the issue in that case was whether this Court would adopt the theory of concurrent or dual causation. Nevertheless, the question presented required this Court to resolve whether the accident fit within the automobile exclusion in the insureds' homeowner policy. See also *Allstate Ins Co v Keillor (After Remand)*, 450 Mich 412; 537 NW2d 589 (1995).

sons" under the State Farm policy includes at least the operation of school buses. If we were to construe the policy otherwise, even the most obvious negligent driving would not be covered by the State Farm policy, such as where a school bus driver negligently decides to pass despite a double yellow line and that decision results in injuries to persons aboard the school bus.

The "use" of a school bus, even when limited by the State Farm policy to "carrying of persons in connection with school attendance," encompasses the disembarkment of school children at predetermined bus stops. In *Burke Co School Dist v Roberts*, 220 Ga App 510, 513; 469 SE2d 529 (1996), in which the issue was as here whether the automobile liability insurer or the general liability insurer was responsible for school bus driver negligence in disembarking a young child at an unauthorized bus stop, and the child was struck by an automobile trying to navigate his way home, the Georgia court held that "the dropping off of the child was unquestionably an act which arose 'out of the ownership, maintenance, operation, use,' of the school bus. . . ."

State Farm asserts that it is not subject to liability because it was the school bus driver's "separate, personal act of discharging Amy Doolaard at the wrong stop" and not her "use" of the school bus that caused the injuries. This is not a legally recognizable distinction, however. The school bus driver's charge included disembarking the children at predetermined bus stops, not merely transporting them to and from school. The driver "used" the school bus in doing so, even if one characterizes her conduct as a "separate and personal" act.

A foreseeably identifiable injury resulting from the failure to disembark a child from the school bus at the predetermined destination is no more beyond the scope of "use" under the State Farm policy because the separate and personal negligence of the school bus driver was involved than a foreseeably identifiable injury caused by the school bus crossing a double yellow line or going through a red light would be excluded from "use" under the State Farm policy because the separate and personal negligence of the school bus driver was involved.[12]

B

Our analysis of the Michigan Mutual policy reinforces our conclusion that State Farm, as the automobile liability insurer, rather than Michigan Mutual, the general liability insurer, is responsible for providing coverage in the circumstances. Michigan Mutual's policy states that "[t]he insurance does not apply to bodily injury or property damage arising out of . . . use . . . of any . . . automobile . . . ." Although this exclusion is written in the negative, the language is otherwise virtually identical to that found in the State Farm policy. Accordingly, the analysis in this opinion respecting the provisions concerning coverage in the State Farm policy apply to the virtually mirror-image language of the Michigan Mutual exclusion.

---

[12] We do not, however, mean to imply that all negligent acts of a school bus driver necessarily involve the "use" of a school bus. Situations can be imagined in which a driver's negligence is so disconnected with the use of the school bus that the injuries suffered could not properly be said to be within the language of the State Farm policy considered in this case.

Also telling is that the language of the Michigan Mutual exclusion is set forth under the heading, "Transportation of Pupils." This heading clearly communicates Michigan Mutual's intention not to provide coverage for the transportation of pupils in particular.

V

Ordinarily an automobile liability insurer would not be responsible for injuries suffered, say, ten minutes after disembarkation, and a quarter of a mile from the place where the passenger was disembarked.[13]

We conclude, however, that the term "use" in the phrase "arising out of the ownership, maintenance, or use" of a school bus includes disembarking school children, especially a child at the conclusion of her first day of kindergarten, at the predetermined location. The purpose of transporting a child by a school bus is to assure that the child reaches the predetermined bus stop under the supervision of the school bus driver. Driver Witteveen used the bus to take Amy

---

[13] In *United States Fidelity & Guaranty Corp v Citizens Ins Co of America*, 201 Mich App 491; 506 NW2d 527 (1993), the Court of Appeals correctly concluded that the defendant, whose general liability insurance policy contained an automobile-use exception virtually identical to the one found in the Michigan Mutual policy, was not required to indemnify the transit company in a case in which a passenger on the bus was hit by a car shortly after getting off.

State Farm and Pacific contend that this case is distinguishable from *USF&G* and others like it because the link between the use of the school bus and Amy's injury was broken because the injury occurred about five to ten minutes after and half a mile from where she alighted from the bus.

An accident can be no less said to "flow from" or "grow out of" a school bus driver's misuse of a school bus when the error is of relatively great geographic scope and the child is struck after walking for some distance in an effort to reach home. Nor is such an accident less foreseeable. Regardless of the scope of the mistake, the child was still obliged to walk alone and unaided and face the dangers sought to be avoided by use of the school bus. See *Burke Co School Dist, supra* at 513.

to the wrong place, and a foreseeably identifiable injury resulted. When a school bus driver disembarks a child at a location other than the predetermined location, the purpose of providing secure school bus transportation may, as here, be significantly defeated.

Reversed.

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred with LEVIN, J.