**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED OCTOBER 22, 2002**

THOMAS CHANDLER,

    Plaintiff-Appellee,

v                                    **No. 118811**

COUNTY OF MUSKEGON,

    Defendant-Appellant.

_____

**PER CURIAM**

The issue raised in this appeal is whether the motor vehicle exception to governmental immunity applies where an injury occurred while the vehicle was parked in a maintenance facility for the purpose of cleaning and was not being operated as a motor vehicle. We hold that the injury did not result from the negligent "operation" of the vehicle within the meaning of the motor vehicle exception, codified at MCL 691.1405. Therefore, we reverse the judgment of the Court of Appeals.

## I

On May 21, 1996, plaintiff Chandler and several other persons, who were performing community service under a district court order, were assigned to clean Muskegon Area Transit System (MATS) buses and trolleys at a MATS bus barn. Frederick Smith, a Muskegon County employee, was supervising the workers' cleaning of the interiors of the vehicles. Smith drove one of the buses into the barn, turned off the engine, and started to exit through the open bus doors. As he was doing so, however, the bus doors closed on his neck, apparently because he had neglected to release the hydraulic air pressure valve.

The plaintiff had been waiting to clean the bus when he saw the incident. He attempted to pry open the doors and to hold them until someone came to reach through the bus window and release the air valve. Plaintiff injured his shoulder in the process and brought this action against the county.

## II

Defendant moved for summary disposition under MCR 2.116(C)(7) and (10), asserting that there was no genuine issue regarding any material fact and that the claim was barred by governmental immunity under MCL 691.1407(1).[1]  It

---

[1]

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the

contended that the case was not within the motor vehicle exception to governmental immunity of MCL 619.1405[2] because the bus was not in motion and not being used to transport passengers at the time of plaintiff's injury. Thus, the injury did not arise out of "operation" of the bus.

The circuit court granted defendant's motion for summary disposition, concluding:

> [The] activity of cleaning seats in the bus does not constitute the "operation" of the bus. The bus was not being used or employed to clean anything. The bus was not being used or employed as an instrument to produce any desired work, nor was it being used or employed to produce any desired effect of cleanliness.

The circuit court also said that the cleaning of the bus was a form of maintenance and that the governmental immunity statute refers only to negligent "operation," not to negligent "operation or maintenance." Plaintiff appealed.

---

exercise or discharge of a governmental function.

[2] Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in [the Motor Vehicle Code] sections 257.1 to 257.923 . . . .

**III**

The Court of Appeals reversed.[3]  The Court discussed a number of cases from Michigan[4] and elsewhere[5] and extracted the principle that a vehicle is in operation "as long as it is being used or employed in some specific function or to produce some desired work or effect."  The Court found the facts of this case to come within this exception, explaining:

> Here, bus 440 was being used in a specific function or to produce some desired effect when Smith operated the hydraulic doors as a means of egress, and in anticipation of the workers entering the bus.  Surely, if a bus driver driving a regular county route failed to release the air pressure and an exiting passenger was caught in the doors and injured as a result, as in *Sonnenberg, supra*, there would be no question regarding the application of the motor vehicle exception.  The negligent operation of the hydraulic doors would satisfy the statutory condition that the plaintiff suffer "bodily injury . . . resulting from the *negligent operation* by any . . . employee of the governmental agency, of a motor vehicle."  MCL 691.1405.

> Defendant's argument that because the bus was purchased to transport passengers but had been parked for cleaning at the time of the incident, it was not in a state of being at work, or in the active exercise of some function, or employed to

[3]  Unpublished opinion per curiam, issued February 23, 2001 (Docket No. 220435).

[4] *Orlowski v Jackson State Prison*, 36 Mich App 113; 193 NW2d 206 (1971), *Wells v Dep't of Corrections*, 79 Mich App 166; 261 NW2d 245 (1977), *Nolan v Bronson*, 185 Mich App 163; 460 NW2d 284 (1990), *Kuzinski v Boretti*, 182 Mich App 177; 451 NW2d 859 (1989), and *North v Kolomyjec*, 199 Mich App 724; 502 NW2d 765 (1993).

[5] *Sonnenberg v Erie Metro Transit Auth*, 137 Pa Cmmw 533, 536-537; 586 A2d 1026 (1991), and *Swartz v Hilltown Twp Volunteer Fire Co*, 721 A2d 817 (Pa Cmmw, 1998).

5

produce some desired work or effect, must fail. The statute does not require that the motor vehicle be involved in any particular activity, only that the injury result from the negligent operation of the motor vehicle. Thus, we fail to see why the exception, which would otherwise be applicable to a door-closing injury, should become inapplicable simply because the bus was not on an established route. Also irrelevant is the fact the ultimate object was to clean the bus. The doors of the bus were still being operated for the purpose of exiting the bus (the desired work or effect), an integral part of the use of the bus. Similarly, had Smith backed bus 440 into plaintiff, causing him injury, presumably all would agree that the exception would still be applicable, although the bus had been removed from its regular route to be cleaned. An employee's negligent operation would still be involved. [Slip op at 10-11 (emphasis in original).]

The defendant has filed an application for leave to appeal to this Court.

IV

This appeal involves a decision on a motion for summary disposition. The issue presented is one of statutory construction. Both are questions that we review de novo. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001); *Brown v Michigan Health Care Corp*, 463 Mich 368, 374; 617 NW2d 301 (2000). When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001).

6

V

The Legislature has not defined "operation" for the purpose of MCL 691.1405. Where a nontechnical undefined word is used in a statute, the Legislature has directed that the term should be "construed and understood according to the common and approved usage of the language . . . ." MCL 8.3a, see also *Stanton v Battle Creek*, 466 Mich 611; 647 NW2d 508 (2002). As might be expected, in undertaking to give meaning to words this Court has often consulted dictionaries. *Horace v City of Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998). The *Random House Webster's College Dictionary* (1997) defines "operation" as "an act or instance, process, or manner of functioning or operating." We conclude, in accordance with this definition and in accordance with the narrow construction given to the exceptions to governmental immunity,[6] that the language "operation of a motor vehicle" means that the motor vehicle is being operated *as* a motor vehicle.[7]

---

[6] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 618; 363 NW2d 641 (1984); *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158-159; 615 NW2d 702 (2000).

[7] That it is appropriate to give "operation" a narrower scope than the more expansive definition utilized by the Court of Appeals or the dissent is reinforced by the fact that the Legislature itself, when legislating in the transportation area, uses the word "operation" in a fashion that mirrors the common definition cited above. For example, in the automobile no-fault act the Legislature effectively adhered to a more limited definition of "operation." In MCL 550.3105 the Legislature made benefits payable for injuries arising out of

7

Accordingly, aware that we are considering the dictionary

---

the "ownership, operation, maintenance or use" of a motor vehicle. The obvious import of this listing is that the Legislature clearly intended that "operation" was distinct from ownership, maintenance, and use.

Similarly this construction of the term "operation" is consistent with the use of this term in the automobile owners' liability act. That act states:

> The owner of a motor vehicle is liable for an injury caused by the *negligent operation* of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle *is being driven* with his or her express or implied consent or knowledge. [MCL 257.401(1) (emphasis added).]

This language makes apparent that the "operation of a motor vehicle" refers to activities that are directly associated with the driving of a motor vehicle.

Moreover, MCL 257.625, prohibiting operating a motor vehicle while under the influence of intoxicating liquor, applies to "operating" in the sense of driving the vehicle. *People v Wood*, 450 Mich 399, 404-405; 538 NW2d 351 (1995) (Once a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk.).

Further, this Court has resolved other disputes concerning the word "operation" in a fashion harmonious with the instant case. In the context of a dispute about insurance coverage, in *Pacific Employers Ins Co v Michigan Mut Ins Co*, 452 Mich 218, 226; 549 NW2d 872 (1996), we contrasted the term "use" with the narrower term "operation":

> "Use" is defined more broadly than the mere carrying of persons and, while it encompasses the "operation" of the bus, it may also include a range of activity unrelated to actual driving.

8

definition of the word "operation," as well as construing a governmental immunity statute, which we must construe narrowly, we conclude that the "operation of a motor vehicle" encompasses activities that are directly associated with the driving of a motor vehicle.

In light of this, we reject the Court of Appeals and the dissent's approach because their construction of "operation" would construe the term so broadly that it could apply to virtually any situation imaginable in which a motor vehicle is involved regardless of the nature of its involvement. Therefore, we reject this construction as inconsistent with the principles of interpretation stated above.

## VI

In the context of a motor vehicle, the common usage of the term "operation" refers to the ordinary use of the vehicle *as* a motor vehicle, namely, driving the vehicle. In this case, the injury to plaintiff did not arise from the negligent operation of the bus as a motor vehicle. The plaintiff was not injured incident to the vehicle's operation as a motor vehicle. Rather, the vehicle was parked in a maintenance facility for the purpose of maintenance and was not at the time being operated *as* a motor vehicle.

## VII

Accordingly, we reverse the judgment of the Court of

9

Appeals and reinstate the summary disposition in favor of the defendant entered by the circuit court.

CORRIGAN, C.J., and CAVANAGH, WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

THOMAS CHANDLER,

    Plaintiff-Appellee,

v                                    No. 118811

COUNTY OF MUSKEGON,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

    I respectfully dissent.  The majority today restricts the motor vehicle exception to governmental immunity to instances involving the "actual driving of a motor vehicle."[8]  I disagree.

    Operating a motor vehicle requires the performance of functions some of which are distinct from the act of driving. At a minimum, the Court should include within its reading of the statutory exception those functions that are distinct from, but necessary to and inherent in, driving a motor vehicle.  I would hold that the opening and closing of bus

_____

    [8]Slip op at 7.

doors to permit the driver to leave the bus is one such activity. Therefore, I would affirm the Court of Appeals decision that the motor vehicle exception applies to the factual occurrences alleged by plaintiff.

THE OPERATION OF THE DOORS OF THE BUS IN THIS CASE WAS

INHERENT IN AND NECESSARY TO DRIVING THE BUS

Although it is true that the motor vehicle exception to governmental immunity must be narrowly construed,[9] the majority's reading of the term "operation" is unnecessarily and inappropriately narrow.

The statute in question makes a governmental agency, such as defendant, liable for its negligent operation of a motor vehicle it owns.[10] In writing it, the Legislature did not define the term "operation." Confronted with providing a definition, our Court of Appeals in *Orlowski v Jackson State Prison*[11] adopted the interpretation of "negligent operation" accepted by most other jurisdictions. As a consequence, for over thirty years Michigan courts have followed the rule that "'negligent operation' may occur even though the vehicle is standing still as long as it is being used or employed in some

---

[9] *Stanton v Battle Creek*, 237 Mich App 366; 603 NW2d 285 (1999), aff'd 466 Mich 611 (2002).

[10] MCL 691.1405.

[11] 36 Mich App 113; 193 NW2d 206 (1971).

2

specific function or to produce some desired work or effect."[12] This Court did not grant leave to appeal in *Orlowski* or its progeny to overturn that precedent. However, today, without the benefit of full briefing or oral argument, the majority announced a new rule redefining "negligent operation" to mean "negligent driving." It does this despite the fact that the long line of Court of Appeals cases discussed in the thorough Court of Appeals opinion militates against peremptory action by this Court.

Today's redefinition of "negligent operation" is particularly inappropriate as applied to this case. Here, plaintiff alleged that he was injured as a consequence of the negligent operation of the hydraulic doors on defendant's bus. His injury occurred after the driver had parked the bus and shut off the engine. In order to get out of the bus, the driver had to open the doors. Without contest, the doors were an integral part of the bus. Their operation was inherent in and necessary to the operation of the bus.

Consider the majority's definition of "operation" in a hypothetical case involving the same bus. Assume that a passenger was injured because of negligent operation of the hydraulic doors while the bus was stopped. The bus was not being "operated" as the majority defines the term, because it

---

[12] *Id*. at 116, citing ***Diggins v Theroux***, 314 Mass 735; 51 NE2d 425 (1943).

was not being "driven."  Would the injury be barred by governmental immunity?  If so, what wording in the statute evidences a legislative intent to define the term so narrowly?  If not, why should the fact that in this case the plaintiff was not a passenger affect the definition of "operation?"  Recall that the statute does not require that the motor vehicle be involved in any particular activity.  Recall also that the statute does not include words such as "upon a highway."

Assume a second hypothetical case involving the same bus, in which the bus was stopped on a hill, its engine off.  Through the driver's negligent setting of the brakes, it began to roll, injuring a pedestrian.  Would governmental immunity apply?  Could the Legislature have intended that someone thus injured by the bus would not be entitled to bring suit against defendant merely because the bus was not being driven?

## DECISIONS FROM OTHER JURISDICTIONS FIND OPERATION OF MEANS OF EGRESS FROM A BUS CONSTITUTES OPERATION OF THE BUS

Other jurisdictions interpreting statutes similar to Michigan's have held that functions involving entry or departure from a bus are part of the operation of a motor vehicle.  In *Groves v Dayton Pub Sch*,[13] the Ohio Court of Appeals held that a bus driver's negligence in helping a

---

[13] 132 Ohio App 3d 566; 725 NE2d 734 (1999).

handicapped student get out of a bus involved the "operation

of a motor vehicle."[14]

------

[14] *Id.* at 569.  The *Groves* court interpreted the Ohio governmental immunity statute, Ohio Rev Code Ann § 2744.02, which contains language similar to Michigan's statute:

>    We start by noting that R.C. § 2744.02(A)(1) does indeed provide broad immunity to political subdivisions. It states as follows:

>    For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

>    R.C. § 2744.02(B) contains five exceptions to the sovereign immunity given to political subdivisions by R.C. § 2744.02(A)(1). Only one is pertinent to the present appeal, and it provides as follows:

>    . . . [A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

> \* \* \*

>    (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads when the employees are engaged within the scope of their employment and authority.

(continued...)

5

In *Groves*, the plaintiff suffered a hand injury when the bus driver failed to secure the plaintiff in her wheelchair before helping her get off the bus. The defendant claimed that the bus driver's actions could not constitute "negligent operation of [a] motor vehicle" for the purpose of the Ohio exception to governmental immunity.

The *Groves* Court did not agree. It concluded:

> R.C. Chapter 2744 contains no definition of the term "operation of any motor vehicle." We find the term capable of encompassing more than the mere act of driving the vehicle involved. Neither of the parties to this appeal refer us to any authority construing the term in question with regard to a driver assisting a disabled passenger, and our research in Ohio law has failed to reveal any cases on point.
>
> * * *
>
> Here, Groves was a passenger on a school bus equipped to transport children confined to wheelchairs, which suggests to us that it was equipped with a ramp with which to lift and lower the students in their wheelchairs as they boarded and disembarked from the bus. In addition, Dayton Public Schools had established rules and regulations pertaining to the safe boarding, transportation, and disembarking of handicapped students that required bus drivers to, inter alia,

---

[14] (...continued)
R.C. § 2744.02(B)(1) goes on to provide three exceptions which reinstate immunity where the motor vehicle being operated is a patrol car, fire truck, or emergency medical vehicle responding to an emergency call, none of which are applicable to the present case. Thus, our first inquiry must be whether Dayton Public Schools' bus driver's conduct falls within the ambit of "operating a motor vehicle on the public roads within the scope of his employment." [*Id*. at 568-569.]

6

secure passengers in their wheelchairs when assisting them on or off the school bus. Thus, it can reasonably be inferred that doing so was part of the bus driver's duties and an integral part of his operation of the school bus. Furthermore, we do not exclude the possibility that the driver's operation of the ramp itself would be considered operation of the motor vehicle under the circumstances of this case. [*Id*. at 569-570.]

Similarly, in *Sonnenberg v Erie Metro Transit Auth*,[15] the Commonwealth Court of Pennsylvania held that operating a bus' doors was integral to operating the bus. In that case, the doors unexpectedly closed on the plaintiff while she was getting out of the bus, injuring her. The issue was whether the operation of the doors could be "operation" of a motor vehicle under the Pennsylvania statute.[16]

The *Sonnenberg* Court held:

> The movement of parts of a vehicle, or an attachment to a vehicle, is sufficient to constitute "operation." Moreover, the bus driver's closing of the bus doors is an act normally related to the "operation" of a bus. . . . We must

---

[15] 137 Pa Cmmw 533; 586 A2d 1026 (1991).

[16] The relevant statute, 42 Pa Consol Stat § 8542, provided:

> (b) Acts which may impose liability—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

> (1) Vehicle liability.—The operation of any motor vehicle in the possession or control of the local agency. As used in this paragraph, "motor vehicle" means any vehicle which is self propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

7

conclude, therefore, that (the defendant)'s bus was in "operation" when the bus door struck Sonnenberg . . . ." [*Id*. at 537.]

*Groves* and *Sonnenberg* use different approaches. However, both recognize that the functioning of an apparatus that permits people to enter or depart from a bus should be considered the "operation" of the vehicle itself.

### CONCLUSION

For the reasons stated, I would hold that the stationary bus was still in operation if, as alleged, the driver operated the hydraulic doors as a means of egress, thereby injuring plaintiff. Not only was any operation of the hydraulic doors an operation of the vehicle, it was inherent in and necessary to driving the vehicle. Therefore, I would affirm the decision of the Court of Appeals.

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

8

THOMAS CHANDLER,

    Plaintiff-Appellee,

v                            No. 118811

COUNTY OF MUSKEGON,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

    I respectfully dissent. The majority today restricts the motor vehicle exception to governmental immunity to instances involving the "actual driving of a motor vehicle."[17] I disagree.

    Operating a motor vehicle requires the performance of functions some of which are distinct from the act of driving. At a minimum, the Court should include within its reading of the statutory exception those functions that are distinct from, but necessary to and inherent in, driving a motor vehicle. I would hold that the opening and closing of bus

---

[17]Slip op at 7.

9

doors to permit the driver to leave the bus is one such activity. Therefore, I would affirm the Court of Appeals decision that the motor vehicle exception applies to the factual occurrences alleged by plaintiff.

THE OPERATION OF THE DOORS OF THE BUS IN THIS CASE WAS

INHERENT IN AND NECESSARY TO DRIVING THE BUS

Although it is true that the motor vehicle exception to governmental immunity must be narrowly construed,[18] the majority's reading of the term "operation" is unnecessarily and inappropriately narrow.

The statute in question makes a governmental agency, such as defendant, liable for its negligent operation of a motor vehicle it owns.[19] In writing it, the Legislature did not define the term "operation." Confronted with providing a definition, our Court of Appeals in *Orlowski v Jackson State Prison*[20] adopted the interpretation of "negligent operation" accepted by most other jurisdictions. As a consequence, for over thirty years Michigan courts have followed the rule that "'negligent operation' may occur even though the vehicle is standing still as long as it is being used or employed in some

---

[18] *Stanton v Battle Creek*, 237 Mich App 366; 603 NW2d 285 (1999), aff'd 466 Mich 611 (2002).

[19] MCL 691.1405.

[20] 36 Mich App 113; 193 NW2d 206 (1971).

10

specific function or to produce some desired work or effect."[21] This Court did not grant leave to appeal in *Orlowski* or its progeny to overturn that precedent.  However, today, without the benefit of full briefing or oral argument, the majority announced a new rule redefining "negligent operation" to mean "negligent driving."  It does this despite the fact that the long line of Court of Appeals cases discussed in the thorough Court of Appeals opinion militates against peremptory action by this Court.

Today's redefinition of "negligent operation" is particularly inappropriate as applied to this case.  Here, plaintiff alleged that he was injured as a consequence of the negligent operation of the hydraulic doors on defendant's bus. His injury occurred after the driver had parked the bus and shut off the engine.  In order to get out of the bus, the driver had to open the doors.  Without contest, the doors were an integral part of the bus.  Their operation was inherent in and necessary to the operation of the bus.

Consider the majority's definition of "operation" in a hypothetical case involving the same bus.  Assume that a passenger was injured because of negligent operation of the hydraulic doors while the bus was stopped.  The bus was not being "operated" as the majority defines the term, because it

---

[21] *Id*. at 116, citing *Diggins v Theroux*, 314 Mass 735; 51 NE2d 425 (1943).

was not being "driven." Would the injury be barred by governmental immunity? If so, what wording in the statute evidences a legislative intent to define the term so narrowly? If not, why should the fact that in this case the plaintiff was not a passenger affect the definition of "operation?" Recall that the statute does not require that the motor vehicle be involved in any particular activity. Recall also that the statute does not include words such as "upon a highway."

Assume a second hypothetical case involving the same bus, in which the bus was stopped on a hill, its engine off. Through the driver's negligent setting of the brakes, it began to roll, injuring a pedestrian. Would governmental immunity apply? Could the Legislature have intended that someone thus injured by the bus would not be entitled to bring suit against defendant merely because the bus was not being driven?

## DECISIONS FROM OTHER JURISDICTIONS FIND OPERATION OF MEANS OF EGRESS FROM A BUS CONSTITUTES OPERATION OF THE BUS

Other jurisdictions interpreting statutes similar to Michigan's have held that functions involving entry or departure from a bus are part of the operation of a motor vehicle. In *Groves v Dayton Pub Sch*,[22] the Ohio Court of Appeals held that a bus driver's negligence in helping a

---

[22] 132 Ohio App 3d 566; 725 NE2d 734 (1999).

handicapped student get out of a bus involved the "operation of a motor vehicle."[23]

---

[23] *Id.* at 569.  The *Groves* court interpreted the Ohio governmental immunity statute, Ohio Rev Code Ann § 2744.02, which contains language similar to Michigan's statute:

> We start by noting that R.C. § 2744.02(A)(1) does indeed provide broad immunity to political subdivisions. It states as follows:
>
> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
>
> R.C. § 2744.02(B) contains five exceptions to the sovereign immunity given to political subdivisions by R.C. § 2744.02(A)(1). Only one is pertinent to the present appeal, and it provides as follows:
>
> . . . [A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> * * *
>
> (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads when the employees are engaged within the scope of their employment and authority.

(continued...)

13

In *Groves*, the plaintiff suffered a hand injury when the bus driver failed to secure the plaintiff in her wheelchair before helping her get off the bus. The defendant claimed that the bus driver's actions could not constitute "negligent operation of [a] motor vehicle" for the purpose of the Ohio exception to governmental immunity.

The *Groves* Court did not agree. It concluded:

> R.C. Chapter 2744 contains no definition of the term "operation of any motor vehicle." We find the term capable of encompassing more than the mere act of driving the vehicle involved. Neither of the parties to this appeal refer us to any authority construing the term in question with regard to a driver assisting a disabled passenger, and our research in Ohio law has failed to reveal any cases on point.
>
> * * *
>
> Here, Groves was a passenger on a school bus equipped to transport children confined to wheelchairs, which suggests to us that it was equipped with a ramp with which to lift and lower the students in their wheelchairs as they boarded and disembarked from the bus. In addition, Dayton Public Schools had established rules and regulations pertaining to the safe boarding, transportation, and disembarking of handicapped students that required bus drivers to, inter alia,

---

[23] (...continued)

R.C. § 2744.02(B)(1) goes on to provide three exceptions which reinstate immunity where the motor vehicle being operated is a patrol car, fire truck, or emergency medical vehicle responding to an emergency call, none of which are applicable to the present case. Thus, our first inquiry must be whether Dayton Public Schools' bus driver's conduct falls within the ambit of "operating a motor vehicle on the public roads within the scope of his employment." [*Id.* at 568-569.]

14

secure passengers in their wheelchairs when assisting them on or off the school bus. Thus, it can reasonably be inferred that doing so was part of the bus driver's duties and an integral part of his operation of the school bus. Furthermore, we do not exclude the possibility that the driver's operation of the ramp itself would be considered operation of the motor vehicle under the circumstances of this case. [*Id*. at 569-570.]

Similarly, in *Sonnenberg v Erie Metro Transit Auth*,[24] the Commonwealth Court of Pennsylvania held that operating a bus' doors was integral to operating the bus. In that case, the doors unexpectedly closed on the plaintiff while she was getting out of the bus, injuring her. The issue was whether the operation of the doors could be "operation" of a motor vehicle under the Pennsylvania statute.[25]

The *Sonnenberg* Court held:

> The movement of parts of a vehicle, or an attachment to a vehicle, is sufficient to constitute "operation." Moreover, the bus driver's closing of the bus doors is an act normally related to the "operation" of a bus. . . . We must

---

[24] 137 Pa Cmmw 533; 586 A2d 1026 (1991).

[25] The relevant statute, 42 Pa Consol Stat § 8542, provided:

> (b) Acts which may impose liability—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

> (1) Vehicle liability.—The operation of any motor vehicle in the possession or control of the local agency. As used in this paragraph, "motor vehicle" means any vehicle which is self propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

15

conclude, therefore, that (the defendant)'s bus was in "operation" when the bus door struck Sonnenberg . . . ." [*Id.* at 537.]

*Groves* and *Sonnenberg* use different approaches. However, both recognize that the functioning of an apparatus that permits people to enter or depart from a bus should be considered the "operation" of the vehicle itself.

CONCLUSION

For the reasons stated, I would hold that the stationary bus was still in operation if, as alleged, the driver operated the hydraulic doors as a means of egress, thereby injuring plaintiff. Not only was any operation of the hydraulic doors an operation of the vehicle, it was inherent in and necessary to driving the vehicle. Therefore, I would affirm the decision of the Court of Appeals.