*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

JRR PROPERTIES WESTLAND, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

WESTLAND MALL REALTY, LLC, WESTLAND
CH, LLC, and WESTLAND NASSIM, LLC,

        Defendants/Counterplaintiffs/Third-
        Party Plaintiffs-Appellees,

and

JRR ASSOCIATES, INC., and JRR PROPERTIES,
INC.,

        Third-Party Defendants.

UNPUBLISHED
October 19, 2023

No. 364334
Wayne Circuit Court
LC No. 20-000418-CB

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff owned and operated a restaurant and beer garden on Shopping-Center "outlots" that it leased from defendants. Plaintiff sued defendants for breach of contract after it was evicted from those outlots for nonpayment of rent. The trial court granted defendants summary disposition. We affirm.

## I. BACKGROUND

Plaintiff originally entered into a "Ground Lease" to operate a restaurant on one of the Shopping Center's outlots, and plaintiff agreed to pay a pro rata share of the common-area maintenance costs that the landlord incurred by maintaining the common-area in good repair. In relevant part, the Ground Lease stated:

        Landlord shall keep the Common Areas in a good state of repair and shall
continuously perform maintenance to such Common Areas to ensure that the same

are in a state of repair comparable to that as of the date hereof, subject to ordinary wear and tear and casualty ("Common Area Maintenance"). Landlord's obligations hereunder with regard to Common Area Maintenance shall include, but not be limited to: maintenance, repair and replacement required to clean, preserve and maintain the Common Area; lighting facilities serving the Common Area; policing and traffic direction; fire protection; security; ice and snow removal; landscaping; removal of trash, rubbish and debris; pest extermination; repairing all above and underground utility conduits and lines and sewers wherever such lines run over or under any part of the Common Area; public liability, workers' compensation, property damage and hazard insurance. All parking areas shall be adequately maintained. All holes or breaks in the paving shall be repaired by Landlord promptly after Landlord becomes aware of such an occurrence.

\* \* \*

Landlord shall deliver to Tenant within one hundred twenty (120) days after the end of each calendar year of the Term a statement, certified by an officer of Landlord or Landlord's management company, setting forth the amount of the Common Area Maintenance Cost during the preceding calendar year.

The Ground Lease defined "Common Area" as:

The facilities within the Shopping Center Tract designated for the general enjoyment and use in common of Tenant and other occupants of the Shopping Center which shall include but not be limited to landscaping, curbs, curb cuts, entryways, drives, parking areas, striping, sidewalks and walk-ways, lighting and other utilities as depicted on attached Exhibit "A-4".

The Ground Lease also included an indemnification clause:

12.2. **Indemnification by Landlord**. Landlord covenants and agrees to pay, defend, indemnify and save harmless Tenant from and against any and all liability, loss, damage, cost, expense (including all Actual Attorneys' Fees and expenses of Tenant), causes of action, suits, claims, demands or judgments of any nature whatsoever arising or resulting from, unless if due to the wrongful or negligent act of Tenant, its agents, contractors, or employees: (i) any injury to or the death of any person or damage to any property occurring in the Shopping Center; (ii) the use, non-use, condition, operation, maintenance, or management of the Shopping Center or any Common Area; (iii) any negligence or willful act or omission on the part of the Landlord or its agents, contractors, servants, employees, licensees or invitees; (iv) the violation by Landlord of any term, condition or covenant of this Lease or of any contract, agreement, restriction or Regulation affecting the Shopping Center Tract or any part thereof or the ownership, occupancy or use thereof, (v) the condition or maintenance of the Landlord's Area of Responsibility, or (vi) the violation by Landlord of any term, condition or covenant of this Lease or of any contract, agreement, restriction or regulation affecting the Landlord's Area of Responsibility. The obligations of Landlord under this Section 12.2 shall survive any termination of this Lease and any transfer or assignment by Landlord or Tenant of this Lease or any interest hereunder.

Plaintiff then entered into a second lease for another outlot to operate a beer garden.

Defendants bought the Shopping Center after plaintiff entered into those leases, and defendants assumed the role of the landlord under both leases. Defendant Westland Mall Realty notified plaintiff that it had an outstanding balance on both outlots, and plaintiff responded that Westland Mall Realty had breached the leases by not conducting the necessary maintenance and repairs after other tenants had vacated the Shopping Center. Plaintiff also alleged that defendants had been improperly billing plaintiff for property tax because plaintiff was paying the property tax directly to the city.

Westland Mall Realty initiated eviction proceedings against plaintiff, and the district court in those proceedings ordered plaintiff to pay costs associated with both outlots or be evicted. Plaintiff did not pay those costs, and plaintiff's establishments closed shortly after the eviction proceedings.

Plaintiff then sued defendants, claiming that defendants had breached the leases by not providing certified common-area-maintenance statements, overcharging plaintiff for property tax and common-area maintenance, and failing to maintain the common area with proper lighting and snow removal. Plaintiff maintained that defendants were liable to plaintiff for contract damages under the indemnification provision of the Ground Lease. Defendants answered, asserting that plaintiff failed to mitigate damages and counterclaiming that plaintiff had breached the leases by failing to make rental payments, pay property taxes, and pay other costs and fees associated with upkeeping the property.

During the course of the litigation, plaintiff offered affidavits from its members that stated that plaintiff's establishments lost "thousands of dollars per month in revenue and hundreds of thousands of dollars or more of losses over time" because defendants failed to maintain the parking lots. This resulted in plaintiff not being able to pay its rent. Further, those affidavits stated that plaintiff was overcharged for the common-area maintenance, but failed to substantiate that allegation beyond conjecture that the overcharge had occurred.

Defendants produced a report that identified the monthly common-area maintenance charges, as well as plaintiff's failure to pay those charges. This report was accompanied by an affidavit of the director of operations for the third-party manager that defendants hired to manage their assets.

The parties submitted competing motions for summary disposition under MCR 2.116(C)(8), (9), and (10), and the trial court held that plaintiff had acknowledged that it had not made all payments for the common-area maintenance, plaintiff did not refute the city's letter identifying the amount of taxes that were outstanding, plaintiff had not moved to terminate the lease before the eviction, plaintiff did not specify how defendants failed to maintain the Shopping Center or how that alleged failure caused the damages, and that the indemnification provision was to protect plaintiff from loss by a third party and not as a remedy for a breach of contract. The trial court granted defendants summary disposition, and judgment was entered against plaintiff for the stipulated amount of damages.

Plaintiff now appeals.

## II. ANALYSIS

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (cleaned up). When, as here, the trial court grants a motion for summary disposition brought under both MCR 2.116(C)(8) and (C)(10), and it is clear that the trial court looked beyond the pleadings, this Court "will treat the motions as having been granted pursuant to MCR 2.116(C)(10)." *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Sherman*, 332 Mich App at 632.

### A. COMMON-AREA MAINTENANCE

Plaintiff argues that the trial court erred by granting defendants summary disposition on plaintiff's claim that defendants failed to conduct common-area maintenance as required by the Ground Lease. This issue raises a question of contract interpretation, which is reviewed de novo. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). A written contract must be interpreted according to its plain and ordinary meaning. *Woodington v Shokoohi*, 288 Mich App 352, 373-374; 792 NW2d 63 (2010). If contractual language is clear, its interpretation is a question of law for the court. *Id*. at 374. Courts must give "effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Id*.

Causation is an essential element in all breach-of-contract claims. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 118-119; 839 NW2d 223 (2013). "[T]he plaintiff must establish a causal link between the asserted breach of contract and the claimed damages." *Id*. Causation may be established with circumstantial evidence, as long as the proofs facilitate reasonable inferences of causation beyond mere speculation. *Id*. at 119.

The trial court held that plaintiff did not specify how defendants failed to conduct the common-area maintenance and, even if it had, plaintiff did not establish how defendants' failure caused plaintiff's damages. Plaintiff argues that defendants did not conduct the proper common-area maintenance as required by the Ground Lease because they did not "clear the parking lot of snow and ice, failed to properly light the parking areas at night, and failed to maintain the parking lot," and plaintiff provided affidavits from its members to establish that defendants' failure resulted in a loss of business at plaintiff's establishments.

Even assuming for the sake of argument that there is no genuine issue of material fact that defendants did not perform the common-area maintenance as required by the Ground Lease, plaintiff's affidavits only provide conclusory speculation that their purported lost business was caused by defendants' purported failures. As the trial court held, an unkempt Shopping Center might well result in the loss of some business, but both snow removal and properly lit parking areas have limited applicability to the operation of plaintiff's establishments because outdoor lighting is only necessary during certain evening hours and snow removal is only necessary during a few winter months depending on the weather. Nowhere do the affidavits, for example, tie particular instances of poor lighting or snowy parking areas with lower-than-expected revenues at the restaurant. To create a genuine issue of fact, plaintiffs had to come forward with evidence that

drew (or at least reasonably inferred) a causal connection between instances of poor maintenance and instances of lost business, and they failed to do so. Thus, even when viewing the evidence favorably to plaintiff, plaintiff's affidavits amounted to mere speculation that was insufficient to create a genuine issue of material fact as to causation. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994).

Next, plaintiff argues that the trial court erred in granting defendants summary disposition regarding plaintiff's claim that defendants overcharged plaintiff for the common-area maintenance costs. The trial court held that defendants had provided plaintiff with an accurate bill regarding the common-area maintenance charges. Even though plaintiff argues that the trial court misconstrued what "certification" meant under the Ground Lease, the gravamen of plaintiff's claim is that it overpaid the charges and that it was entitled to recoup the excess payment. Plaintiff relied on its members' affidavits to demonstrate that there was an overpayment, but the statements that plaintiff's members provided in the affidavits lacked the specificity required to establish that there was a genuine issue of material fact. Instead, the affidavit provided speculation that an overpayment had occurred, and this is not sufficient to overcome defendants' evidence that the common-area maintenance charges were properly submitted to plaintiff and not paid by plaintiff.

Plaintiff further argues that the trial court erred by granting defendants summary disposition on the basis that plaintiff failed to mitigate its damages, which was one of defendants' affirmative defenses. Plaintiff ignores, however, that the trial court merely remarked that plaintiff never sought to terminate the Ground Lease as a mere description of the evidence that plaintiff relied on to argue that defendants' failures caused plaintiff's business losses. The trial court did not rely on plaintiff's purported failure to mitigate its losses when granting defendants summary disposition, and instead the trial court held that plaintiff had not presented a genuine issue of material fact that defendants' lack of common-area maintenance caused plaintiff's business losses, as already explained.

Thus, the trial court did not err when it granted defendants summary disposition on these issues.

## B. INDEMNIFICATION

Next, plaintiff argues that the trial court erred by dismissing its claim for indemnification under the Ground Lease. As noted earlier, the Ground Lease states that defendants agree to "indemnify and save harmless [plaintiff] from and against any and all liability, loss, damage, cost, [or] expense…of any nature whatsoever arising or resulting from, unless if due to the wrongful or negligent act of [plaintiff], … the use, nonuse, condition, operation, maintenance, or management of the Shopping Center or any Common Area."

The trial court held that this indemnification provision was limited to third-party conduct. As plaintiff points out, however, this indemnification provision is broadly written, and it is arguable whether it is limited by its terms to losses involving third parties. With that said, even assuming that the provision could be read broadly to apply to contract claims between the parties, the phrase "arising or resulting from" requires a causal connection "that is more than incidental, fortuitous or but for." *Pacific Employers Ins Co v Mich Mut Ins Co*, 452 Mich 218, 224; 549 NW2d 872 (1996) (cleaned up). The indemnification provision makes clear, moreover, that it does

not apply if the "liability, loss, damage, cost, [or] expense" is "due to the wrongful or negligent act of" plaintiff. Thus, by its plain terms, the indemnification provision does not make defendants the general insurer of any and all losses suffered by plaintiff. Rather, to be a covered loss, that loss must be connected to one of the enumerated reasons listed in the indemnification provision.

Plaintiff was evicted because it owed outstanding amounts on its leases and other obligations. The indemnification provision does not indemnify plaintiff for eviction based on the nonpayment of rent. With respect to maintenance, as already explained, plaintiff failed to come forward with evidence creating a genuine issue as to causation. Plaintiff also points to the loss of anchor tenants and general decline in the Shopping Center, but plaintiff provides no evidence beyond speculation and generalities that any action or inaction by defendants caused those anchor tenants to leave or business at the Shopping Center to decline. Thus, even assuming without deciding that the trial court read the indemnification provision too narrowly, summary disposition in favor of defendants on this matter was still appropriate. *Gleason v Dep't of Transp*, 256 Mich App, 1, 3; 662 NW2d 822 (2003).

## C. COUNTERCLAIMS

Lastly, plaintiff argues that the trial court erred when it granted defendants summary disposition on defendants' counterclaims because the party "who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Able Demolition, Inc v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (cleaned up). To preclude recovery, the initial breach must be substantial, meaning that the nonbreaching party did not "obtain[] the benefit which he or she reasonably expected to receive." *Id*. (cleaned up). This Court has recently held that a substantial breach:

> can be found only in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party. [*Tindle v Legend Health, PLLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360861); slip op at 6 (cleaned up).]

Plaintiff argues that defendants breached the lease twice. Once when they failed to indemnify plaintiff's losses, and once when they failed to maintain the common area. Plaintiff ignores, however, that plaintiff's breach for nonpayment arose before any claim of indemnification related to that eviction. Further, plaintiff does not argue that defendants' failure to maintain the common area rendered plaintiff's obligations *impossible*. As already stated, plaintiff did not offer evidence tending to show that defendants' failure to maintain the common area caused plaintiff's business losses. Simply put, the first-substantial-breach rule is inapplicable to this case.

## III. CONCLUSION

The trial court did not err when it granted defendants summary disposition because plaintiff

did not substantiate that defendants' alleged failure to provide common-area maintenance caused plaintiff's business losses.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle