CENTURY MUTUAL INSURANCE COMPANY v LEAGUE
GENERAL INSURANCE COMPANY

Docket No. 157870. Submitted January 10, 1995, at Grand Rapids. Decided August 29, 1995, at 9:20 A.M.

Century Mutual Insurance Company brought an action in the Midland Circuit Court against League General Insurance Company, Gary and Sharon Feaster, and Nancy and James Brandt, seeking a declaration of rights in a dispute over insurance coverage. Nancy Brandt was injured when she leaned into an automobile owned by the Feasters and was bitten by the Feasters' dog. The plaintiff, the Feasters' homeowner's insurance carrier, settled with the Brandts and brought the declaratory judgment action, claiming that because the homeowner's policy excluded coverage for liability resulting from the ownership, maintenance, or use of an insured motor vehicle, League General, the insurer of the Feasters' automobile, was liable under the automobile policy. The court, Paul J. Clulo, J., granted summary disposition for the plaintiff, ruling that the liability of the Feasters arose out of their ownership, maintenance, or use of an automobile. League General appealed.

The Court of Appeals *held:*

1. The League General policy, written in conformity with the residual liability coverage provisions of the no-fault act, MCL 500.3131; MSA 24.13131, and the Insurance Code, MCL 500.3009(1); MSA 24.13009(1), provides coverage for liability "arising out of the ownership, maintenance, or use including the loading or unloading of the insured car."

2. In order for an accident to be deemed to have arisen out of the ownership, maintenance, or use of an automobile, the accident must have arisen out of the inherent nature of the automobile and within the natural territorial limits of an

REFERENCES
Am Jur 2d, Automobile Insurance § 204.
Automobile liability insurance: what are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle. 15 ALR4th 10.

automobile, the actual use must not have terminated, and the automobile must not merely contribute to cause the condition that produces the injury but, by itself, must produce the injury.

3. The injury from the dog bite did not arise out of the Feasters' ownership, maintenance, or use of an automobile. The automobile was the mere situs of the injury. The complaint in the underlying personal injury action was based on strict liability for dog bites and did not allege that the injury arose out of the ownership, maintenance, or use of the automobile or that the automobile contributed in any way to the injury.

Reversed and remanded.

AUTOMOBILES — NO-FAULT — INSURANCE CODE — DOG BITES.

An injury resulting from a dog bite received from a dog that is in a parked automobile does not arise out of the ownership, maintenance, or use of an automobile within the residual liability provisions of the Insurance Code and the no-fault act (MCL 500.3009[1], 500.3131; MSA 24.13009[1], 24.13131).

*Welch, MacAlpine, Bahorski, Bieglecki & Farrell, P.C.* (by *Timothy A. Bahorski*), for Century Mutual Insurance Company.

*Currie & Kendall, P.C.* (by *Peter A. Poznak*), for Gary and Sharon Feaster.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin* and *Mark C. Smiley*), for League General Insurance Company.

Before: MACKENZIE, P.J., and GRIFFIN and NEFF, JJ.

GRIFFIN, J. In this declaratory judgment action, homeowner's insurance carrier, plaintiff Century Mutual Insurance Company, and automobile liability carrier, defendant League General Insurance Company, dispute coverage between themselves for a liability claim asserted against their insureds

Gary and Sharon Feaster.[1] The underlying liability claim stems from a dog-bite injury that occurred when Nancy Brandt leaned into an automobile owned by the Feasters and was bitten by the Feasters' dog.

The circuit court granted summary disposition in favor of plaintiff, Century Mutual Insurance Company, ruling that the Feasters' liability arose out of their "ownership, maintenance, or use of an automobile." We reverse and rule that liability for this claim is the responsibility of plaintiff homeowner's carrier rather than defendant automobile liability carrier.

I

At the outset, we note that the Feasters have coverage for this liability claim under either their homeowner's policy or their automobile liability policy. The Century Mutual Insurance Company homeowner's policy provides broad liability coverage in favor of its insureds subject to certain enumerated exclusions. One of the exclusions contained in the policy is for liability "resulting from the ownership, maintenance, use, loading or unloading by an insured of motorized vehicles."

Conversely, the Feasters' League General automobile liability policy provides liability coverage for "damages for which an insured person is legally liable because of bodily injury or property damage arising out of the ownership, maintenance, or use including the loading or unloading of the insured car." The Feasters' automobile liability policy is written in conformity with the residual liability coverage provisions of the no-fault act,

---

[1] Plaintiff Century Mutual Insurance Company provided a defense in the underlying tort action under a reservation of rights. The dog-bite case against the Feasters was settled for the mediation amount of $65,000.

MCL 500.3131; MSA 24.13131, and the Insurance Code, MCL 500.3009(1); MSA 24.13009(1). The Insurance Code requires residual liability insurance for all liability imposed by law "for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle." *Id.*

We hold that the automobile liability coverage provision and the homeowner's insurance exclusion are the corollary of each other. The terms of the homeowner's exclusion are the terms of the automobile liability coverage. Accordingly, the Feasters are insured for this liability claim and the only question is which of the two policies applies.

## II

The case that is most instructive with regard to the present issue[2] is *Thornton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986). In *Thornton,* the Supreme Court construed the causation standard for no-fault personal protection insurance (PIP) benefits. Despite a difference in statutory language between the first-party PIP and residual liability sections of the no-fault act, the Supreme Court followed the residual liability case *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1; 235 NW2d 42 (1975), in holding that for the recovery of PIP benefits there must be more than a "but for," incidental, or fortuitous connection between the damages sustained and the use of a motor vehicle. The Supreme Court in *Thornton* applied the *Kangas* causation standard despite the fact that the PIP no-fault provision contains an addi-

---

[2] We recognize that on similar facts there is a split of authority in other jurisdictions. See anno: *Automobile liability insurance: What are accidents or injuries "arising out of the ownership, maintenance, or use" of insured vehicle,* 15 ALR4th 10, §§ 13, 27, pp 53-103.

tional qualifying phrase regarding the use of a motor vehicle "*as a motor vehicle*." Also see *Bourne v Farmers Ins Exchange,* 449 Mich 193; 534 NW2d 491 (1995).

Similarly, the Supreme Court has also applied the *Thornton/Kangas* causation test to no-fault property protection benefits (PPI). See *Turner v Auto Club Ins Ass'n,* 448 Mich 22; 528 NW2d 681 (1995).

As noted by the Supreme Court in *Thornton, supra* at 657, the phrase "as a motor vehicle" contained in the PIP and PPI sections of Michigan's no-fault act was taken from the Uniform Motor Vehicle Accident Reparation Act, 14 ULA 41 *et seq.* Section 1(a)(2) of the uniform act defines basic reparation benefits as "benefits providing reimbursement for net loss suffered through injury *arising out of the maintenance or use of a motor vehicle*." (Emphasis added.) 14 ULA 42. Section 1(a)(6) further defines "maintenance or use of a motor vehicle as "maintenance or use of a motor vehicle *as a vehicle*." (Emphasis added.) 14 ULA 43. The comment following § 1(a)(6) indicates that the maintenance or use definition was added to clarify that an expansive construction of the phrase "use of a motor vehicle" would be contrary to the intent of the uniform act:

> The definition of "maintenance or use of a motor vehicle" is important for two disparate reasons. First, it establishes the scope of the abolition of tort liability, which is limited to tort liability arising from the "ownership, maintenance, or use of a motor vehicle" (Section 5). Second, it describes initial eligibility for the receipt of basic reparation benefits, which cover "loss suffered through injury arising out of the maintenance or use of a motor vehicle" (Section 1(a)(2)).
> While "use" has a broader meaning than operat-

ing or driving a vehicle, the requirement that use of the motor vehicle be "as a motor vehicle" qualifies the term so that both the tort exemption and the availability of basic reparation benefits are more nearly limited to activities whose costs should be allocated to motoring as part of an automobile insurance package. . . .

The indefiniteness of the defined term has produced litigation in cases arising under automobile liability policies. In some cases, in part because of a tendency to construe an ambiguous term against the interests of the companies drafting the policy, and, in part to assure a solvent source of payment to a person injured by an admitted wrongdoer, it is arguable that courts have included accidents too far removed from the general activity of motoring and that a narrower construction of the term would be more consistent with the policy of this Act. Other than specifying that injury arise out of maintenance or use "as a vehicle," it has not been possible to define the general concept more specifically, so borderline cases are left to the courts, as they have been under current automobile insurance policies. [14 ULA 47.]

A prime example of the liberal construction the commentary warns against is found in *Michigan Mutual Liability Co v Ohio Casualty Ins Co,* 123 Mich App 688; 333 NW2d 327 (1983). In *Michigan Mutual,* our Court cited a host of cases from other jurisdictions that did not involve a no-fault statute for the proposition that the phrase "arising out of the ownership, operation, maintenance, or use of a motor vehicle" in an automobile liability policy should be construed broadly to provide coverage as long as there is some causal nexus with an automobile. Arising out of the use of an automobile was construed by the *Michigan Mutual* panel to mean " 'originating from,' or 'growing out of,' or 'flowing from' [the use of an automobile]." *Id.* at

695, quoting with approval 1 Long, Law of Liability Insurance, § 1.22, pp 1-59—1-60.

Most cases from this Court have followed the more restrictive causation requirements of *Thornton/Kangas,* while ignoring *Michigan Mutual.* For example, in *A & G Associates, Inc v Michigan Mutual Ins Co,* 110 Mich App 293, 296-297; 312 NW2d 235 (1981), a taxicab company requested automobile liability coverage for a claim asserted by a passenger against a taxicab driver. In holding that there was no automobile *residual liability coverage* for the assault and battery committed by the driver, our Court applied the *Kangas* causation standard. Under *Kangas,* for an injury to arise out of the use of an automobile, the causal connection with the automobile must be more than incidental, fortuitous, or but for. Further, "the injury must be foreseeably identified with the normal use, maintenance and operation of the vehicle." *A & G Associates, supra* at 296, quoting with approval *Kangas, supra* at 17.

Although some panels of our Court continue to cite *Michigan Mutual* with approval, see, e.g., *Farm Bureau General Ins Co of Michigan v Riddering,* 172 Mich App 696, 703-704; 432 NW2d 404 (1988), and *Celina Mutual Ins Co v Citizens Ins Co,* 136 Mich App 315, 321; 355 NW2d 916 (1984), the majority of our decisions follow the *Thornton/Kangas* causation standard for coverage issues involving residual liability, personal protection insurance, or property protection insurance benefits. See, e.g., *American Nat'l Fire Ins Co v Frankenmuth Mutual Ins Co,* 199 Mich App 202, 208-209; 501 NW2d 237 (1993), *DAIIE v Clemons,* 153 Mich App 244; 395 NW2d 53 (1986), *Central Mutual Ins Co v Walters,* 143 Mich App 332; 372 NW2d 542 (1985), and *Shaw v Allstate Ins Co,* 141 Mich App 331; 367 NW2d 388 (1985). To the extent *Michigan*

*Mutual* is inconsistent with the causation standard of *Thornton/Kangas,* we consider it overruled.

In *Thornton, supra* at 651, the Supreme Court not only relied upon *Kangas* but also cited with approval the three-part test for liability coverage set forth in 6B Appleman, Insurance Law & Practice (Buckley ed), § 4317, pp 367-369:

> [T]hree rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.

We conclude that the Appleman formulation is useful for deciding automobile coverage issues. Additionally, because we view the three-part Appleman test as consistent with and a clarification of *Thornton/Kangas,* we hereby adopt it as our own.

### III

After applying these standards to the present case, we hold that the liability asserted against the Feasters does not arise out of their ownership, maintenance, or use of a motor vehicle. Rather, the Feaster automobile was the mere situs of the injury. The underlying personal injury complaint did not assert liability against the Feasters based upon their tortious ownership, maintenance, or use of an automobile. On the contrary, the only theory of liability pleaded in the personal injury action was the strict liability dog-bite statute. MCL

287.351; MSA 12.544. The theory seized upon by the lower court that the configuration of the automobile may somehow have contributed to the accident was not pleaded and lacks evidentiary support, MCR 2.116(G)(4).

We view the present case as similar to *Thornton, supra* at 661, wherein the Supreme Court reasoned:

> In this case, the inherent nature of the use of a motor vehicle did not cause Mr. Thornton's injuries. Mr. Thornton was injured by a robber's gunfire. While the injuries were perhaps "foreseeably identifiable" with the occupational or commercial use of a motor vehicle *as a taxicab,* the relation of the gunshot wound to the functional use of a motor vehicle as a motor vehicle was at most merely "but for," incidental, and fortuitous.

Reversed and remanded for entry of judgment in favor of defendant League General Insurance Company and against plaintiff Century Mutual Insurance Company.

MacKenzie, P.J., concurred.

Neff, J. I concur in the result only.