# STATE OF MICHIGAN

# COURT OF APPEALS

GRANGE INSURANCE COMPANY OF
MICHIGAN,

       Plaintiff-Appellee,

v

MS ESCORT TRUCK SERVICES, LLC, JOSEPH
P. ZARYCH, JR., MICHAEL BOS, and ESTATE
OF JOE M. HERSHBERGER, by LYDIA
STUTZMAN, Personal Representative,

       Defendants,

and

ANGELA CLARK, Individually, as Conservator
of the ESTATE OF HOWARD A. CLARK, JR.,
and as Next Friend of MASON CLARK and
MARLEE CLARK, Minors,

       Defendant-Appellant.

ANGELA CLARK, Individually, as Conservator
of the ESTATE OF HOWARD A. CLARK, JR.,
and as Next Friend of MASON CLARK and
MARLEE CLARK, Minors,

       Plaintiff/Counter-Defendant-
       Appellant,

and

ESTATE OF JOE M. HERSHBERGER, by
LYDIA STUTZMAN, Personal Representative,

       Plaintiff/Counter-Defendant,

v

UNPUBLISHED
June 28, 2018

No. 338260
Wexford Circuit Court
LC No. 2017-027134-CK

No. 338262

-1-

NORTHLAND CASUALTY COMPANY,

      Defendant/Counter-Plaintiff-
      Appellee,

v

GERALD FITZGERALD, doing business as
VETERANS PILOT CAR SERVICES,

      Counter-Defendant.

Wexford Circuit Court
LC No.  2016-026881-NI

---

GRANGE INSURANCE COMPANY OF
MICHIGAN,

      Plaintiff-Appellee,

v

MS ESCORT TRUCK SERVICES, LLC, JOSEPH
P. ZARYCH, JR., MICHAEL BOS, and ANGELA
CLARK, Individually, as Conservator of the
ESTATE OF HOWARD A. CLARK, JR., and as
Next Friend of MASON CLARK and MARLEE
CLARK, Minors,

      Defendants,

and

ESTATE OF JOE M. HERSHBERGER, by
LYDIA STUTZMAN, Personal Representative,

      Defendant-Appellant.

No.  338277
Wexford Circuit Court
LC No.  2017-027134-CK

---

ANGELA CLARK, Individually, as Conservator
of the ESTATE OF HOWARD A. CLARK, JR.,
and as Next Friend of MASON CLARK and
MARLEE CLARK, Minors,

      Plaintiff/Counter-Defendant,

and

ESTATE OF JOE M. HERSHBERGER, by
LYDIA STUTZMAN, Personal Representative,

  Plaintiff/Counter-Defendant-
  Appellant,

v                                               No. 338279
                                                Wexford Circuit Court
NORTHLAND CASUALTY COMPANY,                     LC No. 2016-026881-NI

  Defendant/Counter-Plaintiff-
  Appellee,

v

GERALD FITZGERALD, doing business as
VETERANS PILOT CAR SERVICES,

  Counter-Defendant.

Before: CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

In these declaratory judgment actions relating to the duty to defend and indemnify, appellants appeal as of right from orders granting Grange Insurance Company of Michigan ("Grange") and Northland Casualty Company ("Northland") summary disposition under MCR 2.116(C)(10). Appellants each filed two appeals, one pertaining to the order as to Grange and one pertaining to the order as to Northland, and this Court issued an order consolidating the four appeals. *Grange Ins Co of Mich v MS Escort Truck Servs LLC*, unpublished order of the Court of Appeals, entered May 19, 2017 (Docket Nos. 338260, 338262, 338277, and 338279). For the reasons set forth in this opinion, we affirm.

I. BACKGROUND

For purposes of these declaratory judgment actions, the parties do not appear to dispute the basic underlying facts of this case. Shortly before 6:00 a.m. on July 15, 2014, Howard Clark, Jr., and Joe Hershberger were passengers in a pickup truck traveling north on M-115 when the truck crashed into a semi-trailer that was blocking both the northbound and southbound lanes of M-115. Hershberger was fatally injured, and Howard sustained serious injuries. The semi-trailer was hauling a 104-foot concrete beam that was supported on one end by a converter dolly.

Gerald Fitzgerald,[1] was operating the lead "escort vehicle" for the semi-trailer that morning. Joseph Zarych, Jr., an employee of MS Escort Truck Services, LLC (MS Escort), was operating the lead escort vehicle that morning for a second semi-trailer, which was to follow the previously mentioned semi-trailer that was hauling the 104-foot concrete beam. MS Escort was owned by Michael Bos.

At some point before approximately 5:44 a.m. that morning, while it was still dark, Fitzgerald had driven out of a driveway and into the northbound lane of M-115. The first semi-trailer, hauling the 104-foot concrete beam, followed by making a wide turn across both the northbound and southbound lanes of M-115. The semi-trailer drove into the grass beyond the shoulder of the southbound lane, with its headlights facing north, and the concrete beam spanned both lanes of M-115 with the other end supported by the converter dolly in the driveway. Subsequently, two vehicles traveling south on M-115 stopped short of the concrete beam after the driver of the semi-trailer sounded his air horn. The semi-trailer came to a complete stop before completing its turn. It was at this point that the pickup truck carrying Howard and Hershberger crashed into the semi-trailer while traveling north on M-115.

Appellant Angela Clark, in her individual and representative capacities, thereafter filed an action against multiple parties that included, as relevant to the instant appeals, MS Escort, Bos, Zarych, and Fitzgerald. Appellant Lydia Stutzman, as personal representative of Hershberger's estate, filed a similar action against multiple defendants that also included the previously mentioned relevant parties. With respect to Fitzgerald and as pertinent to the issues now raised on appeal, it appears from the factual allegations that appellants' essential theory of recovery against Fitzgerald was that he negligently operated his escort vehicle by failing to drive into a position to control, block, or warn southbound drivers on M-115 regarding the concrete beam blocking the road. With respect to MS Escort, Bos and Zarych (the MS Escort parties), and as pertinent to the issues now raised on appeal, it appears from the factual allegations that appellants' theory of recovery was essentially predicated on Zarych's alleged negligence in operating his escort vehicle by failing to drive his vehicle to a position to control, warn, or block northbound traffic on M-115 regarding the concrete beam blocking the road. The merits of these underlying actions are not before us in the instant appeals.

Subsequently, in Lower Court No. 2016-026881-NI, appellants filed a joint complaint against Northland, seeking a declaratory judgment that Northland had a duty to defend and indemnify Fitzgerald in the underlying actions pursuant to Fitzgerald's insurance policy with Northland. Northland filed a counterclaim seeking a declaratory judgement that the claims in the underlying actions were not within the coverage provided by its policy issued to Fitzgerald and that Northland did not owe a duty to defend or indemnify Fitzgerald. Northland maintained that it was entitled to declaratory relief because the allegations in the underlying actions did not result from the "use" of a covered "auto" as required by the policy. In Lower Court No. 2017-027134-CK, Grange filed a complaint seeking a declaratory judgment that under the insurance policy it

---

[1] Gerald Fitzgerald was doing business as Veterans Pilot Service. For the sake of simplicity, we will refer to him as "Fitzgerald" in this opinion.

issued to MS Escort, Grange was not obligated to defend or indemnify MS Escort, Zarych, or Bos in the underlying actions because the nature of the allegations in the underlying actions did not fall within the scope of the coverage provided by the insurance policy. Both the Northland and Grange policies stated that the insurer would "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."

All parties sought summary disposition, and a single hearing was held addressing the summary disposition motions in both Lower Court No. 2016-026881-NI and Lower Court No. 2017-027134-CK. In its ruling from the bench, the trial court concluded that the proper analysis to apply was the three-part test set forth in 6B Appleman, Insurance Law & Practice (Buckley Ed), § 4317, pp 367-369 (the Appleman test), which had been specifically adopted by this Court in *Century Mut Ins Co v League Gen Ins Co*, 213 Mich App 114, 121; 541 NW2d 272 (1995).[2] Under the first prong of the Appleman test, the trial court stated that the accident did not arise out of the inherent nature of the automobiles because it "arose as a result of the conduct of the escort drivers not signaling and warning people who are at risk because of the oversize load." Under the second prong, the trial court explained that the accident did not arise within the natural territorial limits of the automobile and that "[w]e have a duty on the escort drivers to provide warnings to the public; that's a duty that exist for them, but that's not a duty that is inherent with the automobile." Analyzing the third prong, the trial court concluded that the escort vehicles did not produce the injuries because they were caused by the collision of the northbound pickup truck with the semi-trailer. Accordingly, the trial court granted Grange and Northland summary disposition under MCR 2.116(C)(10) and concluded that Grange and Northland were not required to defend or indemnify their respective insureds in the underlying actions. The trial court denied appellants' subsequent motions for reconsideration.

These appeals followed. In Docket Nos. 338260 and 338262, Angela, in her individual and representative capacities, appealed the trial court's ruling regarding Grange and Northland respectively. In Docket Nos. 338277 and 338279, Stutzman, as personal representative of Hershberger's estate, appealed the trial court's ruling regarding Grange and Northland respectively. As previously noted, the four appeals were consolidated by this Court.

## II. STANDARD OF REVIEW

---

[2] The Appleman test provides as follows:

1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury. [*Century Mut Ins Co*, 213 Mich App at 121.]

"This Court reviews de novo a trial court's decision on a motion for summary disposition in an action for a declaratory judgment." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 512-513; 810 NW2d 95 (2011).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

Additionally, "questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## III. ANALYSIS

Appellants primarily argue that the trial court erred in granting summary disposition in favor of Grange and Northland because the trial court applied an incorrect test to determine whether the accident resulted from the use of Fitzgerald's and Zarych's escort vehicles.

"It is well settled that if the allegations of the underlying suit arguably fall within the coverage of the policy, the insurer has a duty to defend its insured." *Radenbaugh v Farm Bureau Gen Ins Co of Mich*, 240 Mich App 134, 137; 610 NW2d 272 (2000) (quotation marks and citation omitted). "However, the duty to defend and the duty to indemnify are not determined solely on the basis of the terminology used in a plaintiff's pleadings." *USF&G v Citizens Ins Co*, 201 Mich App 491, 493; 506 NW2d 527 (1993). "[A] a court must focus on the cause of the injury to ascertain whether coverage exists," and "[i]t is the substance rather than the form of the allegations in the complaint which must be scrutinized." *Id*. at 494. The duty to defend is broader than the duty to indemnify. *Radenbaugh*, 240 Mich App at 138. In determining whether an insurer has a duty to defend its insured, we consider the language of the insurance policy to discern the scope of the policy's coverage. *Id*. Reviewing a dispute over the meaning of an insurance policy requires us to "look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). The terms of an insurance contract are enforced as written unless an ambiguity exists. *Id*.

In this case, both the Northland and Grange policies provided that the insurer would "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' *and resulting from the ownership, maintenance or use of a covered 'auto'*." (Emphasis added.)

Our Supreme Court has noted that "[t]he phrase 'arising out of the ownership, maintenance or use' of a vehicle has commonly been used in automobile insurance policies" and

generally provides the "basic causal relation test" in no-fault automobile insurance plans. *Thornton v Allstate Ins Co*, 425 Mich 643, 648-649; 391 NW2d 320 (1986) (citations and some quotation marks omitted). Our Supreme Court has further explained that this phrase "had a relatively well-established meaning in insurance law" at the time that the Michigan no-fault act was enacted and that "[a]ll courts agreed that some sort of causal connection between the injury and the ownership, maintenance, or use of the vehicle was required for coverage." *Id*. at 649-650.

The *Thornton* Court discussed an earlier decision from this Court, *Kangas v Aetna Cas & Surety Co*, 64 Mich App 1; 235 NW2d 42 (1975), which, as the *Thornton* Court noted, involved the interpretation of the phrase " 'arising out of the ownership, maintenance or use of the owned automobile' " in a pre-no-fault insurance contract. *Thornton*, 425 Mich at 650; see also *Kangas*, 64 Mich App at 4, 8, 17. The *Thornton* Court quoted the following test that had been adopted in *Kangas* for the required causal connection between an injury and the use of a motor vehicle:

> "[W]e conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." [*Thornton*, 425 Mich at 650-651, quoting *Kangas*, 64 Mich App at 17 (alteration in original).]

Additionally, our Supreme Court in *Thornton* quoted the Appleman test, contained in 6B Appleman, § 4317, pp 367-369, for the proposition that pre-*Kangas* caselaw "generally required more than 'but for,' incidental or attenuated causation." *Thornton*, 425 Mich at 651. The Appleman test provides as follows:

> "Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury." [*Id.*, quoting Appleman, § 4317, pp 367-369.]

The *Thornton* Court applied these standards and held that the injuries that a taxi driver suffered during an armed robbery of his taxicab "did not arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle" for purposes of recovering personal protection insurance benefits under MCL 500.3105(1)[3] because the injuries "had only a 'but for,' incidental, and fortuitous relation" with the driver's use of the motor vehicle as a motor vehicle.

---

[3] MCL 500.3105(1) provides, "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter."

*Thornton*, 425 Mich at 646, 661-662. Our Supreme Court reasoned that the "motor vehicle was not the instrumentality of the injuries" but was "merely the situs of the armed robbery." *Id.* at 660. The *Thornton* Court further explained that the "relation between the functional character of the motor vehicle and [the driver's] injuries was not direct" and that "the inherent nature of the use of a motor vehicle did not cause [the driver's] injuries" because the injuries were caused by the robber's gunfire. *Id.* at 660-661.

Subsequently, in *Century Mut Ins Co*, 213 Mich App at 121, this Court formally adopted the Appleman test "for deciding automobile coverage issues." The *Century Mut Ins Co* Court noted in doing so that the Appleman test was consistent with, and provided clarification for, the *Thornton/Kangas* standard. *Id.* Like the instant case, *Century Mut Ins Co* involved the question whether the insureds' liability for an injury came within insurance policy language that provided coverage for " 'damages for which an insured person is legally liable because of bodily injury or property damage arising out of the ownership, maintenance, or use including the loading or unloading of the insured car.' " *Id.* at 115-116. In *Century Mut Ins Co*, an individual was injured when she leaned into the insureds' automobile and was bitten by the insureds' dog. *Id.* at 116. This Court held that under the Appleman test and the *Thornton/Kangas* causation standard, the dog-bite injury did not arise out of the ownership, maintenance, or use of a motor vehicle. *Century Mut Ins Co*, 213 Mich App at 117-118, 120-121. The *Century Mut Ins Co* Court reasoned that the automobile "was the mere situs of the injury," that the assertion of liability against the insureds was based on the strict liability dog bite statute, and that the injury was not caused by the inherent nature of the automobile. *Id.* at 121-122.

In this case, following the above principles, we apply the Appleman test as a tool that is "useful for deciding automobile coverage issues." *Id.* at 121. Under the first prong of the test, " '[t]he accident must have arisen out of the inherent nature of the automobile, as such.' " *Id.*, quoting Appleman, § 4317, pp 367-368. In this case, the allegations involving Fitzgerald and Zarych[4] in the underlying actions concerned their alleged failure to control, block, or warn drivers on M-115 regarding the semi-trailer and concrete beam that was blocking the road. These underlying claims relate to the alleged failure of Fitzgerald and Zarych to fulfill their professional duties as escort drivers for the semi-trailer that was involved in the crash with the northbound pickup truck. The fundamental purpose of a motor vehicle, however, is providing transportation, not controlling traffic as an escort vehicle for a semi-trailer. Cf. *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 215, 219-220; 580 NW2d 424 (1998) (concluding that "[w]hether an injury arises out of the use of a motor vehicle 'as a motor vehicle,' " for purposes of determining an injured person's entitlement to personal protection insurance benefits under § 3105(1) of the no-fault act, "turns on whether the injury is closely related to the transportational function of automobiles"); cf. also *Thornton*, 425 Mich at 661 (distinguishing between "the inherent nature of the use of a motor vehicle" and the "occupational or commercial

---

[4] Because the pertinent allegations involving MS Escort and Bos were predicated on Zarych's alleged negligence with respect to his operation of his escort vehicle, we only need to analyze Zarych's alleged actions and inactions to determine whether the trial court erred by determining that Grange was not obligated to defend or indemnify the MS Escort parties.

use of a motor vehicle *as a taxicab*"). The fact that Fitzgerald and Zarych each may have performed their escort-driver duties while in a motor vehicle does not transform their respective alleged actions and inactions into conduct that involved " 'the inherent nature of the automobile, as such.' " *Century Mut Ins Co*, 213 Mich App at 121, quoting Appleman, § 4317, p 368; *McKenzie*, 458 Mich at 215, 219-220; *Thornton*, 425 Mich at 661. Instead, the pertinent allegations in the underlying actions concerned the failure of Fitzgerald and Zarych to take action of any kind to control, block, or warn drivers on M-115 with respect to the hazard presented by the semi-trailer in the road. These allegations relate to the duties of Fitzgerald and Zarych in their professional role and rather than to demonstrate that the accident arose out of the inherent transportation function of their vehicles " 'as such.' " *Century Mut Ins Co*, 213 Mich App at 121, quoting Appleman, § 4317, p 368.

Moving to the second prong of the Appleman test, " '[t]he accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated.' " *Century Mut Ins Co*, 213 Mich App at 121, quoting Appleman, § 4317, pp 368-369. In this case, the accident occurred when the pickup truck carrying Howard and Hershberger crashed with the semi-trailer; the accident did not arise within the natural territorial limits of the vehicles driven by Fitzgerald and Zarych.

Finally, the third prong requires that " '[t]he automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.' " *Century Mut Ins Co*, 213 Mich App at 121, quoting Appleman, § 4317, p 369. In this case, the vehicles driven by Fitzgerald and Zarych did not produce the injury; at best, the alleged failure of Fitzgerald and Zarych to fulfill their professional duties as escort drivers could have contributed to causing the condition that led to the crash, which is insufficient to meet the third prong of the Appleman test. *Century Mut Ins Co*, 213 Mich App at 121, quoting Appleman, § 4317, pp 369. The fact that Fitzgerald and Zarych allegedly failed to perform these duties while they were in motor vehicles does not mean that the vehicles produced the injury.

Therefore, the underlying allegations involving the vehicles driven by Fitzgerald and Zarych do not satisfy any of the Appleman test prongs. Accordingly, the injuries in this case did not result from the ownership, maintenance, or use of their vehicles. Because these underlying allegations did not arguably fall within the coverage of the Grange and Northland insurance policies, the trial court did not err by granting summary disposition in favor of Grange and Northland. *Radenbaugh*, 240 Mich App at 137.

Appellants advance several arguments against this conclusion. First, appellants argue that the Appleman test does not apply in the instant case; according to appellants, its application is somehow limited to situations where the negligent use of a vehicle has not been pleaded because the theory of liability in *Century Mut Ins Co* was premised on the strict-liability-dog-bite statute. Appellants further rely on *Wakefield Leasing Corp v Transamerica Ins Co of Mich*, 213 Mich App 123, 125-127; 539 NW2d 542 (1995). Appellants argue that *Wakefield Leasing Corp* also applied the Appleman test to a situation that did not involve "allegations regarding the use of the vehicle." In *Wakefield Leasing Corp*, a taxi driver was injured when a passenger assaulted him in his taxicab. *Id*. at 125. The question before this Court in *Wakefield* was whether the insurer had a duty to defend the insured taxicab company under the applicable automobile liability policy based on the allegation that the taxicab company had failed to install a safety

partition between the front and rear seats. *Id*. at 126-127. However, there is no language in either *Century Mut Ins Co* or *Wakefield Leasing Corp* creating such a limitation on the application of the Appleman test. The *Century Mut Ins Co* Court expressly adopted the Appleman test "for deciding automobile *coverage issues*." *Century Mut Ins Co*, 213 Mich App at 121 (emphasis added). The instant case involves an issue of coverage under an automobile insurance policy, and we are bound by *Century Mut Ins Co*, MCR 7.215(J)(1). Therefore, we reject appellants' argument because the Appleman test applies. *Century Mut Ins Co*, 213 Mich App at 121.

Next, appellants argue that *Thornton* stands for the proposition that the issue whether use of a motor vehicle caused an injury must be resolved "in favor of coverage if there is any allegation that a use of a motor vehicle caused injury unless there is an intentional tort alleged that is excluded under the insurance policy." In addition to the fact that appellants cite nonbinding dicta from *Thornton* in an attempt to support this argument,[5] there is absolutely no language in the *Thornton* opinion indicating that the Court's decision was predicated on the fact that the injury was caused by an intentional tort. Instead, the Court was clear that its decision was predicated on the lack of more than an incidental causal connection between the injuries and the "functional character of the motor vehicle." *Thornton*, 425 Mich at 660.

Next, appellants argue that the instant case is actually controlled by *Vanguard Ins Co v Clarke*, 438 Mich 463; 475 NW2d 48 (1991), overruled on other grounds by *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 63; 664 NW2d 776 (2003), and that the Appleman test does not apply because the *Vanguard Ins Co* found that an injury arose out of the operation and use of an automobile without applying the Appleman test. In *Vanguard Ins Co*, an individual drove into his garage after a night of consuming alcohol and closed the garage door while the car engine continued to run. *Vanguard Ins Co*, 438 Mich at 467. The individual died from the carbon monoxide fumes, as did his wife and son who were in the home. *Id*.

However, *Vanguard Ins Co* is inapplicable to the instant case and does not stand for the proposition argued by appellants because the issue whether the deaths arose out of the operation and use of an automobile was not discussed by the *Vanguard Ins Co* Court. The only issue before the Court was whether the theory of concurrent causation should be adopted in the context

---

[5] "Obiter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 160 n 7; 871 NW2d 530 (2015) (citation and quotation marks omitted). The language from *Thornton* that is cited by appellants involves a reference to the view of a commentator that liability protection should be provided for any use of an automobile unless the policy expressly limits coverage to use as a vehicle; but the necessity of exclusionary or limiting language in an insurance policy was not at issue before the Court in *Thornton*, and the *Thornton* Court also did not formally adopt the particular commentator view cited by appellants in this case. See *Thornton*, 425 Mich at 656-657. Thus, appellants have only cited dicta in support of their position, and we are not bound by this language. *Auto Owners Ins Co*, 310 Mich App at 160 n 7.

of insurance liability where although a policy exclusion exists, there were two or more causes of an indivisible injury and one cause falls within the coverage of the insurance policy. *Id*. at 465-466. In *Vanguard Ins Co*, it was argued that the deaths were caused by both the closing of the garage door and the operation of the automobile and that, under the theory of concurrent causation, the exclusion in the homeowner's insurance policy for injuries arising out of the use of a motor vehicle did not prohibit liability under the homeowner's policy because that policy would cover the negligent act of closing the garage door. *Id*. at 468-469. Our Supreme Court declined to adopt the concurrent causation theory. *Id*. at 474-475. The Court merely noted, without discussing any relevant test and indeed without providing any analysis on the point at all, that "the tragic event at issue here clearly 'arose out' of the operation and use of an automobile." *Vanguard Ins Co*, 438 Mich at 475. Therefore, we reject appellants' arguments that *Vanguard Ins Co* somehow controls our analysis in the instant case or requires us to abandon the Appleman test.

Next, appellants argue that our analysis should be guided by *Pacific Employers Ins Co v Michigan Mut Ins Co*, 452 Mich 218; 549 NW2d 872 (1996). According to appellants, *Pacific Employers Ins Co* dictates (1) that the Appleman test is inapplicable and (2) that when analyzing whether an injury arose out of the use of an automobile, the focus is on the specific use of the vehicle at issue under the unique facts and circumstances of a given case. Apparently, appellants urge us to abandon the Appleman test and consider the particular uses of escort vehicles to determine whether the injuries in this case resulted from the use of a covered auto. Appellants essentially argue that the specific use of the vehicles at issue must always be considered regardless whether there is any language in the insurance policy addressing uses of particular types of motor vehicles.

In *Pacific Employers Ins Co*, 452 Mich at 220, a child was injured crossing a street after a school bus driver dropped her off at the wrong location on her first day of kindergarten. Our Supreme Court held that the " 'use' of a school bus, *as stated in these policies of insurance*, includes disembarkation of a kindergartener at a place other than the predetermined bus stop, and that an injury that is foreseeably identifiable with the disembarkation at a place other than the predetermined location, arises out of the 'use' of the school bus." *Id*. (emphasis added). The school district's automobile insurance policy provided in pertinent part that it would pay " 'all sums which the insured shall be legally obligated to pay as damages' " due to accidents " '*arising out of the ownership, maintenance or use . . .* of the owned motor vehicle.' " *Id*. at 221-222. Significantly, however, the school district's automobile insurance policy also provided in relevant part that the coverage only applied while the vehicle was being used for a defined " 'use.' " *Id*. at 222. The policy included the following definition of school bus use:

> "Bus uses are:
>
> A. School Bus Use.
>
> School Bus Use—means the carrying of persons in connection with school attendance or any school activity of your school or school district." [*Id*.]

As appellants in this case point out, the *Pacific Employers Ins Co* Court analyzed the particular use of school buses in reaching its conclusion. *Id*. at 226. However, in the instant

-11-

case, no such additional language regarding the use, purpose or scope of escort vehicles is present in the previously cited insurance policy provisions at issue, and there is consequently no indication that the insurance policy requires consideration of the particular uses of escort vehicles as distinguished from ordinary motor vehicles. The analysis in *Pacific Employers Ins Co* was clearly tied to the language of the specific insurance policy at issue, and there is no language in the opinion announcing the bright-line rule proposed by appellants that a court is always to scrutinize the particular use of the individual vehicle at issue in a given case to determine whether an accident resulted from the use of a motor vehicle. Appellants have not directed us to any language in the relevant insurance policies addressing the use of motor vehicles as escort vehicles or that would require us to apply the type of analysis to escort vehicles that the *Pacific Employers Ins Co* Court applied to school buses. Instead, the insurance policies at issue in this case refer more generally to the use of a covered auto, and, as previously discussed, the Appleman test provides the proper analytical framework. Appellants essentially ask us to add language to the insurance contracts, which we decline to do because our task is to enforce the insurance contract as written. *Henderson*, 460 Mich at 353. For these reasons, *Pacific Employers Ins Co* is inapplicable to the instant case and does not compel a conclusion that the trial court erred.

Next, appellants argue that the underlying allegations involving the vehicles driven by Fitzgerald and Zarych satisfy the definition of "accident" contained within the Grange and Northland policies and that the trial court erred by either ignoring the application of the term accident or finding the term to be ambiguous without construing it against the insurance companies. However, appellants' focus on the definition of accident in the policies is misplaced. The Northland and Grange policies in this case provide that coverage exists for injuries "caused by an 'accident' *and* resulting from the ownership, maintenance or use of a covered 'auto'." (Emphasis added.) Accordingly, regardless whether the incident qualifies as an accident under the policies, that accident *must also* result from the ownership, maintenance or use of a covered auto. As previously discussed, the injuries did not result from the ownership, maintenance, or use of the vehicles driven by Fitzgerald and Zarych. Contrary to the argument raised on appeal by appellants, there is no conflict between the conclusions (1) that an accident occurred and (2) that the accident did not actually result from the use of the vehicles driven by Fitzgerald and Zarych, as determined under the Appleman test. Thus, we also reject appellants' argument that the definition of "accident" in the policies somehow affects our analysis.

## IV.  CONCLUSION

The injuries in the underlying actions did not result from the ownership, maintenance, or use of the vehicles driven by Fitzgerald and Zarych. Therefore, the allegations against Fitzgerald and Zarych did not provide a basis for coverage under the Grange and Northland insurance policies that would require Grange and Northland to defend or indemnify their respective insureds in the underlying actions, and the trial court did not err by granting summary disposition in favor of Grange and Northland.

Affirmed.  Grange and Northland, as prevailing parties, may tax costs.  MCR 7.219(A).


/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello