**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0364n.06

Case No. 19-1935

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| HAMILTON SPECIALTY INSURANCE COMPANY, | ) ) | **FILED**<br>Jun 19, 2020<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
|  | ) | MICHIGAN |
| TRANSITION INVESTMENT, LLC; KELVIN | ) |  |
| MARTIN, Personal Representative of the Estate | ) | **OPINION** |
| of Michelle R. Ford; PRECIOUS FORD, | ) |  |
| Personal Representative of the Estate of Jaysean | ) |  |
| Ford and Jayceon Ford. Next Friend of Semaj | ) |  |
| Ford, a Minor, | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |
|  | ) |  |

BEFORE: COLE, Chief Judge; CLAY and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Property owners expect protection from insurers should disaster strike. After all, that's the point of buying insurance. And insured parties expect insurers to defend them when disaster invites litigation. That's because insurers typically have a duty to defend policyholders unless the insurance plan unambiguously rules out coverage.

Transition Investment, LLC (Transition) bought an insurance policy from Hamilton Specialty Insurance Company (Hamilton). After a faulty stove triggered a fire at Transition's rental property, Hamilton refused to cover the damages caused by the blaze or to participate in the related litigation. It did so because it believed that the plan's language ruled out coverage. We disagree. By breaching its duty to defend Transition, Hamilton threw away its shot at challenging

Transition's settlement with the injured parties. So Transition's consent judgment binds Hamilton. We AFFIRM.

I.

Hamilton sold Transition an insurance policy covering three properties in Detroit. Transition rented one such property to Charles Starkey. While Starkey lived at the property, a fire broke out that destroyed the building, killed three people, and injured a fourth. When the fire started, twelve individuals occupied the property. The estates of the deceased and the injured party filed suit (the Wayne County litigation) against Transition. The plaintiffs complained that Transition failed to provide a habitable premises and neglected to maintain the property's stove, which allegedly caused the fire.

During the Wayne County litigation, Transition asked Hamilton to defend it. But Hamilton refused. For reasons we discuss below, Hamilton claimed that the insurance policy didn't cover damages caused by the fire. Eventually, Transition entered a $3,000,000 consent judgment with the plaintiffs. The state court approved the consent judgment, which it called "fair [and] reasonable." (R. 14, Ex. 12, PageID # 438.)

After the plaintiffs in the Wayne County litigation filed a writ of garnishment to recover from Hamilton, Hamilton sought a declaratory judgment in the Eastern District of Michigan. Hamilton asked the court to confirm that it wasn't liable for the consent agreement. The Wayne County plaintiffs and Transition responded by seeking a declaration that Hamilton breached its duty to defend Transition and summary judgment binding Hamilton to the consent judgment. Hamilton cross-moved for summary judgment, arguing that the settlement didn't bind it. The district court thought it "outrageous" that Hamilton denied coverage and criticized Hamilton's refusal to participate in the Wayne County litigation because it could have done so "without giving

up any rights." (R. 21, Tr. Mot. Hr'g, PageID # 624.) And the court found the exclusionary clauses

in the policy inapplicable. So the court held that Transition's consent agreement bound Hamilton.

On that basis, it entered summary judgment and a declaratory judgment for Transition, and denied

Hamilton's motions. Hamilton now appeals.

This dispute centers on the insurance policy's language that allegedly excused Hamilton

from covering damages on Transition's property. First, the policy excludes liability for damages

stemming from Transition's "assumption of liability in a contract or agreement." (R. 1-2, Compl.

Ex. A., PageID # 32.) That language states:

> This insurance does not apply to . . . "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) Assumed in a contract or agreement that is an "insured contract," or
> (2) That the insured would have in the absence of the contract or agreement.

(*Id.*) This provision does not define the phrase "assumption of liability."

Next, the policy excludes coverage for damages "arising out of" or "resulting from" any

statutory violation relating to habitability. This language appears in the policy's section titled

"Habitability Violation Exclusion." (*Id.* at 78.) There, the policy reads:

> This insurance does not apply to damages or expenses due to "bodily injury" [or] "property damage" . . . arising out of or resulting from the alleged or actual violations(s) of the following, as they pertain to "habitability," including amendments thereto:
> > (a) Civil Codes;
> > (b) Health and Safety Codes;
> > (c) Any Housing and Urban Development laws, ordinances or statutes;
> > (d) Rent stabilization laws or ordinances;
> > (e) Federal, State or local section 8 (government subsidized) or programs;
> > (f) Any administrative rules or regulations pertaining to any of the foregoing, including but not limited to those promulgated by local municipalities; or
> > (g) Actual or constructive wrongful eviction arising from (a) through (f) above.

> [Hamilton] shall not have any duty to defend any claim, proceeding or "suit" in any way based on, attributed to, arising out of, resulting from or any manner related to that which is described above, including but limited to, the diminished value of property or mental, physical or emotional injuries alleged.

(*Id.*) The policy does not define the terms "arising out of" or "resulting from."

Finally, the policy prohibits Transition from binding Hamilton to a settlement without its consent. Language to this effect appears twice. First, the policy states that "[n]o insureds will, except at their own cost, voluntarily take a payment, assume any obligation, or incur any expense, other than for first aid, without [Hamilton's] consent." (*Id.* at 40.) In addition, "[Transition's] rights and duties under this Policy may not be transferred without [Hamilton's] written consent except in the case of death of an individual Named Insured." (*Id.* at 43.)

Hamilton relies on the above language to show that it wasn't responsible for covering damages caused by the fire. That would mean Hamilton had no duty to defend Transition in the Wayne County litigation. So it urges us to find that it isn't bound by Transition's consent judgment.

## II.

This Court reviews a district court's grant of summary judgment de novo. *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 231 (6th Cir. 2019). Summary judgment is appropriate if the movant shows that there is no genuine dispute over any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In conducting this inquiry, we view all evidence in the light most favorable to, and draw all inferences in favor of, the non-moving party." *Mays v. LaRose*, 951 F.3d 775, 783 (6th Cir. 2020). This standard remains the same for reviewing cross-motions for summary judgment. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

Under Michigan law, courts resolve disputed insurance policies "in accordance with [their] terms." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999). And we

do so by resolving ambiguous policies in the insured's favor. *Id.* at 194. This is doubly true when courts review exclusionary clauses that excuse insurers from liability. "Exclusionary clauses in insurance policies are strictly construed in favor of the insured. Coverage under a policy is lost if any exclusion in the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect . . . ." *Century Sur. Co. v. Charron*, 583 N.W.2d 486, 488 (Mich. Ct. App. 1998) (per curiam); *see also Brown v. Farm Bureau Gen. Ins. Co. of Mich.*, 730 N.W.2d 518, 520–21 (Mich. Ct. App. 2007).

In short, contractual language limiting coverage must be unambiguous. Otherwise the clause is unenforceable. What's more, relying on exclusionary clauses to avoid liability is an affirmative defense. *Shelton v. Auto-Owners Ins. Co.*, 899 N.W.2d 744, 749 (Mich. Ct. App. 2017). So the insurer bears the burden of showing the policy's unambiguousness. *Id.*

Independent of contractual interpretation, Michigan law recognizes an insurer's duty to defend the insured from suit. If coverage is at all arguable, then an insurer must defend the insured. *Polkow v. Citizens Ins. Co. of Am.*, 476 N.W.2d 382, 383 (Mich. 1991); *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. Ct. App. 1996). Stated otherwise, insurers escape their duty to defend only if the policy rules out any colorable interpretation permitting coverage. This is an exacting standard. *See N. Bank v. Cincinnati Ins. Co.*, 125 F.3d 983, 986 (6th Cir. 1997) ("The duty to defend is not limited by the language of the complaint. Rather, the insurer must look beyond the allegations to determine whether coverage is possible. The duty to defend extends to allegations which are groundless, false or fraudulent." (citations omitted)).

When an insurer allegedly breaches its duty to defend, Michigan law requires resolving any doubt over the policy's coverage in the insured's favor. *Am. Bumper*, 550 N.W.2d at 481 (citing *Polkow*, 476 N.W.2d at 384). By breaching that duty, an insurer becomes liable "for the

costs of defense as well as any reasonable, good faith settlement paid by the insured." *N. Bank*, 125 F.3d at 986. Restated, an insurer's failure to defend the insured when the policy arguably permitted coverage binds that insurer to reasonable settlements entered into by the insured.

Hamilton, the insurer, refused to defend Transition, the insured. And Transition already resolved the underlying claim by agreeing to a consent judgment. So Hamilton can't put the litigation genie back into the bottle now that the first suit has ended. That's because Hamilton opted not to defend Transition under a reservation of rights, as insurers typically do, but instead left Transition to fend for itself. As the district court noted, Hamilton likely could have defended Transition "without giving up any rights." (R. 21, Tr. Mot. Hr'g, PageID # 624.) But Hamilton made its choice, so we need not probe its strategical wisdom.

This scenario leaves only two possible outcomes: either (1) Hamilton breached its duty to defend Transition by not participating in the Wayne County litigation, or (2) Hamilton never had a duty to defend Transition under the policy, so it couldn't have breached a duty it never owed. Hamilton argues that the policy's language abrogated its duty to defend Transition because the policy unambiguously didn't cover damages from the fire. As evidence, Hamilton cites two exclusionary clauses in the policy that provide carveouts for coverage. First, the policy doesn't apply to damages "for which the insured is obligated to pay . . . by reason of the assumption of liability[.]" (R. 1-2, Compl. Ex. A., PageID # 32.) Second, the policy prohibits covering damages "arising out of" or "resulting from" a statutory or code violation relating to habitability. (*Id.* at 78.) We examine these exclusionary clauses in turn.

## A.

To defend or not to defend: That is the question Hamilton needed to answer when Transition informed it about the Wayne County litigation. Hamilton opted for the latter. Such a

decision can be vindicated only if, on its face, the state court complaint ruled out coverage. *Polkow*, 476 N.W.2d at 383–84. The Wayne County plaintiffs alleged that Transition's negligent maintenance of its property led to the fire and the resulting injuries. Nothing in the complaint suggests that Transition violated terms in its insurance contract or took any action nullifying Hamilton's duty to defend. (*See id.* at 1–4.) So when Hamilton received the complaint, it lacked surefire evidence that Transition's policy unarguably barred coverage. And Michigan law tells us:

> The duty of the insurer to defend the insured *depends upon the allegations in the complaint of the third party* in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage.

*Detroit Edison Co. v. Michigan Mut. Ins. Co.,* 301 N.W.2d 832, 835 (Mich. 1981) (emphasis added); *see also Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*, 329 F.3d 546, 552 (6th Cir. 2003).

Following that standard, we begin our analysis with the complaint filed in the Wayne County litigation. Because that document provides no indication that Transition violated its agreement with Hamilton, we fail to understand how Hamilton divined that it had no duty to defend Transition in state court. The Wayne County plaintiffs argued only that Transition's negligence caused an injury. And negligence committed by the insured fits squarely within Transition's insurance policy.

Even so, Hamilton argues that exclusionary clauses in Transition's policy made clear that coverage was impossible. For instance, the policy excuses Hamilton from covering damages Transition incurred "by reason of the assumption of liability in a contract or agreement." ( R.1-2, Compl. Ex. A., PageID # 32.) So Hamilton contends that Transition's alleged assumption of its

tenant's liability created liability for damages caused by the fire. To make this claim, Hamilton needs to show that the policy's language unambiguously ruled out coverage for damages related to the fire and that no possible interpretation permitted coverage. If not, then the "assumption of liability" exclusionary clause did not extinguish Hamilton's duty to defend Transition in the Wayne County litigation.

Michigan law proves instructive on reading "assumption of liability" exclusionary clauses. The Michigan Court of Appeals recently interpreted an insurance policy containing "assumption of liability" language. It ruled that "the contractual-liability exclusion does not 'bar *all* contract liability,' but rather 'is limited to a special type of contract—one in which the insured has assumed the liability of another, i.e., a hold harmless or indemnification agreement.'" *Traveler's Prop. Cas. Co. of Am. v. Peaker Servs.*, 855 N.W.2d 523, 529 (Mich. Ct. App. 2014) (citation omitted). In other words, prohibiting "assumption of liability" means prohibiting "assuming the legal obligations or responsibilities of another." *Id.* at 535.

Transition argues that its negligent maintenance of a stove on the property caused the fire. That would mean damages from the fire sprung from Transition's negligence, not third-party actions. Indeed, the Wayne County litigation focused on Transition's negligence and not third-party liability that Transition had assumed. And Transition only needs to present an arguable interpretation of its policy that would permit coverage. Because *Traveler's Property* supports how Transition interprets the "assumption of liability" clause, Hamilton cannot use that language to escape its duty to defend.

**B.**

Although Michigan caselaw undermines Hamilton's assumption of risk argument, the exclusionary clause covering statutory violations is a different animal. Neither the Michigan

Supreme Court nor a Michigan appellate court has specified what it means for damages to arise out of, or result from, a statutory violation in the home insurance context. That question arguably turns on whether such language invokes but-for causation, proximate causation, or something else. It could also depend on whether that language excludes liability for damages exacerbated by the statutory violations, or only for damages from events caused by the statutory violation. For instance, an uninstalled smoke alarm cannot cause a fire, but it can certainly worsen the injuries suffered during the fire.

Transition's policy does not cover damages "arising out of" or "resulting from" violations of various statutes addressing habitability, including: civil codes, health and safety codes, housing laws, and administrative regulations. (R. 1-2, Compl. Ex. A., PageID # 78.) And Hamilton says that Transition violated those codes by: (1) having twelve people occupy a three-bedroom home; (2) failing to provide an alternative exit in case of a fire; (3) failing to install a working smoke detector in the property's basement; and (4) failing to install a window that could be opened for escaping a fire. So Hamilton argues that the policy doesn't cover the fire because "even one statutory violation precludes coverage." (Appellant Br. at 20.)

But Transition's statutory violations alone don't trigger the exclusionary clause under the policy's plain language. The damages must have arisen out of or resulted from the violations. Although Michigan law doesn't directly instruct us on how to apply this exclusionary clause, we do know that a Michigan appellate court rejected a "liberal construction" of "arising out of" language in an automobile insurance policy. *Century Mut. Ins. Co. v. League Gen. Ins. Co.*, 541 N.W.2d 272, 274 (Mich. Ct. App. 1995). There, the court refused to read "arising out of" to mean "originating from, or growing out of, or flowing from [the use of an automobile]." *Id.* (alteration in original). Instead, the court adopted a "restrictive" standard requiring that a "causal connection

9

. . . must be more than incidental, fortuitous, or but for." *Id.* Under that standard, the court didn't find that damages from a dog bite suffered when the plaintiff leaned into a car "arose from" car ownership simply because the "automobile was the mere situs of the injury." *Id.* at 275.

Admittedly, the causal nexus between Transition's statutory violations and damage from the fire is stronger than the car and the dog bite in *Century Mutual*. But *Century Mutual* tells us that Transition isn't liable just because its violations were a "but for" cause of the damages or that its property was the "situs of injury." And decisions from the Michigan Supreme Court and this Circuit support *Century Mutual*'s holding that there must be a causal link to show damages arose out of or resulted from the insured's actions. *See Thorton v. Allstate Ins. Co.,* 391 N.W.2d 320, 322 n.4 (Mich. 1986) (citing *Richard Knox Mut. Ins. Co. v. Kallen,* 376 F.2d 360 (6th Cir. 1967)).

Those cases support Transition's proposition that "the exclusion requires a casual nexus between the complained of condition and the liability allegations of the complaint." (Appellees' Br. at 34.) But that still doesn't tell us if Transition's statutory violations caused or exacerbated the injuries, or whether those violations provide a valid causal nexus. As in many cases, the legal standard gives an easy answer to a hard question. All Transition needs to do is provide an *arguable* interpretation that permits coverage. *Polkow*, 476 N.W.2d at 383. Although the statutory violations may have worsened, or even caused, the injuries here, the record doesn't demand finding that anything aside from Transition's negligence caused the fire or that harm would have been avoided had Transition followed all applicable codes. Given that ambiguity, Hamilton cannot rely on Transition's statutory violations to avoid its duty to defend. What's more, the state court complaint gave Hamilton no indicia that the claim arose from Transition's statutory violations. So Hamilton couldn't have relied on that rationale when it refused to defend Transition in the Wayne County litigation.

In sum, Hamilton cannot show that the policy's exclusionary clauses unarguably prohibited coverage. That's true even if the Michigan court might have ultimately found that the damages in this case resulted from Transition's statutory violations. To show Hamilton's duty to defend, Transition doesn't have to give the winning argument—only a possible argument. And Michigan law doesn't rule out Transition's reading of the policy. On top of that, the state court complaint provided Hamilton no basis to rule out coverage at the time it made that decision. All considered, Hamilton had a duty to defend Transition in the Wayne County litigation.

III.

Aside from the exclusionary clauses, Hamilton argues that the policy prohibited Transition from entering into agreements that could bind Hamilton. By allegedly violating that clause, Transition would have permitted Hamilton to breach its duty to defend. That's because the policy says that "[n]o insureds will, except at their own cost, voluntarily take a payment, assume any obligation, or incur any expense" without Hamilton's consent. (R. 1-2, Compl. Ex. A., PageID # 40.) What's more, it states that Transition's "rights and duties under this Policy may not be transferred without [Hamilton's] written consent[.]" (*Id.* at 43.)

Both parties agree that the first party to breach a contract cannot complain about the other party's subsequent breach. They do so because Michigan law leaves no doubt about that proposition. *See, e.g.*, *Ehlinger v. Bodi Lake Lumber Co.*, 36 N.W.2d 311, 316 (Mich. 1949) ("He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." (quoting *Jones v. Berkey*, 148 N.W. 375, 378 (Mich. 1914))); *Alpha Capital Mgmt. Co. v. Rentenbach*, 792 N.W.2d 344, 360–61 (Mich. Ct. App. 2010); *Michaels v. Amway Corp.*, 522 N.W.2d 703, 706 (Mich. Ct. App. 1994). Hamilton claims that Transition shot first by entering into a consent judgment that improperly bound its insurer. But

11

Transition only did so *after* Hamilton declined to defend it in the Wayne County litigation. That means Hamilton cannot rely on Transition's settlement to justify not defending its insured. An insurer that "wrongfully refuse[s] to defend" the insured thereby "releas[es] the insured from its agreement not to settle suits without its consent." *Elliott v. Casualty Ass'n of Am.*, 236 N.W. 782, 783 (Mich. 1931). And that's the case here.

One last point about the settlement. Under Michigan law, "[i]f an insurer wrongfully declines to defend, the insurer is liable for the costs of defense as well as any reasonable, good-faith settlement paid by the insured." *N. Bank*, 125 F.3d at 986. So Hamilton can be bound only by a reasonable consent judgment. Michigan law views insurance claims settlements as presumptively reasonable unless the challenging party presents contrary evidence. *See Elliott*, 236 N.W. 782 at 783–84; *Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 836 (Mich. Ct. App. 1981). And Hamilton offers no evidence challenging the consent judgment's reasonableness. This Circuit typically treats issues not discussed in an opening brief as abandoned. *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003). Thus Hamilton is bound by the consent judgment because it failed to show, or even assert, that the settlement was unreasonable.

IV.

Michigan law makes it difficult for insurers to deny coverage absent clear-cut language precluding coverage. And Hamilton cannot show that coverage was unambiguously barred under the policy when it decided not to defend Transition. That means Hamilton breached its duty to defend Transition, which binds it to Transition's reasonable consent judgment. We AFFIRM.